UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

                            :

LETIZIA MARTINEZ DE GONZALEZ, as
administratrix and executrix of the Estate of       :
Emilio Martinez Manautou, as Trustee of the
Emilio Martinez Manautou Trust, and as Trustee   :
of the EMM Trust,

                            :

           Plaintiff-Counterclaim Defendant,        Case No. 07-CV-7462 (RJS)

                            :

                -against-

                            :

UBS AG and UBS TRUSTEES LTD.,

                            :       **AFFIDAVIT OF**

           Defendants-Counterclaim Plaintiff      **MITCHEL H. OCHS, ESQ.**

                            :

                  and

                            :

UBS AG,

                            :

           Third-Party Plaintiff,

                            :

                -against-

                            :

ROBERT J. REGER, JR. and THELEN, REID,
BROWN, RAYSMAN & STEINER, LLP,       :

           Third-Party Defendants.          :

                            :

------------------------------------------------------------- X

STATE OF NEW YORK     )
                           ) ss.:
COUNTY OF NEW YORK  )

         MITCHEL H. OCHS, being duly sworn, deposes and says under the penalty of

perjury:

         1.     I am an attorney admitted to the Bars of the State of New York and of the

United States District Court for the Southern District of New York, and I am a member of the

firm of Anderson & Ochs, LLP, counsel to plaintiff Letizia Martinez de Gonzalez, as

administratrix and executrix of the Estate of Emilio Martinez Manautou, as Trustee of the Emilio

Martinez Manautou Trust, and as Trustee of the EMM Trust ("Ms. Gonzalez"). I submit this

affidavit in support of Ms. Gonzalez's motion to compel defendant UBS AG ("UBS") to

relinquish bank deposits held and belonging to her father's Estate.

   2.  Annexed as Exhibit 1 is a copy of what is represented to be the Account

Application for Account YR-202440 at UBS ("Account 440").

   3.  Annexed as Exhibit 2 is a copy of select pages of banking statement for

Account 440, dated November 30, 2007.

   4.  Annexed as Exhibit 3 is a copy of the Letters Testamentary issued in

Texas Probate Court, on or about August 22, 2005, appointing Ms. Gonzalez as legal

representative of the Estate of her father, Emilio Martinez Manautou.

   5.  Annexed as Exhibit 4 is a copy of the Internal Revenue Service Estate Tax

Closing Letter.

   6.  Annexed as Exhibit 5 is a copy of the standard form, General Terms and

Conditions of Accounts.

   7.  Annexed as Exhibit 6 is the form of release agreement prepared by UBS in

connection with the release of certain funds from Dr. Martinez's accounts at UBS.

   8.  Annexed as Exhibit 7 is a copy of the Complaint dated August 21, 2007,

in this action.

                      _____

                    Mitchel H. Ochs, Esq.

Sworn to before me this
18th day of January 2008

_____
Notary Public

CHASE CHATTIN VERGARI
Notary Public, State of New York
No. 02VE6142898
Qualified in New York County
Commission Expires March 27, 2010

Exhibit 1

**UBS**

New ... rk Branch and Miami Branch

## Account Application
(Individual)

ORIGINAL

Account No. _YR - 202 440_

Account: ☑ Individual ☐ Joint

In this application, "**you**" and "**your**" refer to the depositor(s); "**we**," "**us**," "**our**" and "**UBS**" refer to UBS AG.

---

**1  Client Information**

**Depositor One**

Name (first, last) _EMILIO MARTINEZ MANAUTOU_

Legal Residence (street, city, state/province, zip/postal code, country)
_RANCHO EL MEZQUITE_
_MUNICIPIO SAN FERNANDO, EDO DE_
_TAMAULIPAS  MÉXICO_

Telephone

Home _01152 - 841 - 844 2199_

Business _N/A_

Fax _N/A_

Nationality _MEXICO_

Identification paper(s)

Type and No. _PASSPORT #A 2191_

Place issued _MEXICO_

Date _4/29/1991_

U.S. Social Security/U.S. Taxpayer ID No. (if any)

_____

**Depositor Two** (complete if a joint account)

Name (first, last) _____

Legal Residence (street, city, state/province, zip/postal code, country)
_____
_____
_____

Telephone

Home _____

Business _____

Fax _____

Nationality _____

Identification paper(s)

Type and No. _____

Place issued _____

Date _____

U.S. Social Security/U.S. Taxpayer ID No. (if any)

_____

**Use signature pages at the end of this application for information on additional depositors.**

[Remainder of page intentionally left blank]

ENTERED BY: _____
                  Kevin Nguyen

VERIFIED BY: _____

DATE: _____

UBSMARTINEZ00138

CONFIDENTIAL TREATMENT REQUESTED

New York Branch and Miami Branch

---

**2 Correspondence Information**

Mailing Address (complete even if identical to address given in Section 1 above)

*Dr. Emilio Martinez Manautou*

*P.O. Box 625*

*Harlington, TX 78551*

Language of Correspondence _____

If you sign below in this Section 2, we will retain your mail until you instruct us otherwise, and we will debit your account with our retained mail fee as in effect each year. If you have not collected your mail at the end of three years, we may destroy it. We are not liable for any loss, damage or claim that may result from this retained mail service. You understand that your account statements contain important information that should be promptly

and carefully reviewed by you, and that your right to object to transactions shown on such statements may expire under applicable law or the terms of your account agreements due to lapse of time. Notwithstanding the foregoing, Proxy Materials (as defined in Section 5 below) may be destroyed unless they pertain to an upcoming meeting or other corporate action and the date thereof has not passed.

If you do not sign below in this Section 2, your mail will not be retained as described above.

SIGN BELOW ONLY IF YOU WISH YOUR MAIL TO BE RETAINED:

Signature _____

Date _____

---

**3 Accounts and Services Requested**

This application covers the accounts and services checked below and, unless otherwise agreed in writing, all other accounts and services at any office of UBS in the United States that you may later request:

☒ Demand Deposit (Checking Account) and Custody Account at the New York Branch

☐ Demand Deposit (Checking Account) at the Miami Branch and Custody Account at the New York Branch (non-U.S. clients only)

☒ Overnight Sweep Account

☐ Investment Management Account at the New York Branch

☐ Mutual Fund Investment Management Account at the New York Branch

☐ Foreign Currency Deposit Account at the New York Branch or the Miami Branch

Other accounts and services (specify):

☐ _____

☐ _____

☐ _____

Depositor requests the following statement frequency:

☐ Monthly

☐ Quarterly

☐ Other: _____

The following documents are provided to you with this application (list only documents not requiring signature by depositor):

• General Terms and Conditions of Accounts (including Notice About Joint Accounts, Precious Metals Disclosure Statement and Client Privacy Notice)

• Funds Availability Schedule

• Banking Services (fee schedule)

☐ _____

☐ _____

☐ _____

☐ _____

---

04/03-apindiv                    **UBS Private Banking**                    Page 2 of 10

UBSMARTINEZ00139

CONFIDENTIAL TREATMENT REQUESTED

New ᵗk Branch and Miami Branch

## 4  Security Procedure for Account Instructions

From time to time, you may request UBS to accept and act upon oral, written, telephonic or other teleprocess instructions, including without limitation facsimile transmission, concerning the electronic transfer of funds (the "Operative Instructions"), with respect to any of the accounts you currently and/or subsequently maintain at UBS in the United States (hereafter collectively the "Accounts").  You acknowledge that UBS has informed you that it offers to its clients various procedures which provide a secure environment for the transmission of Operative Instructions to UBS, including Keylink/SCI, which permits the transmission of Operative Instructions in encrypted form.  You further understand that if you elect to subscribe to the Keylink/SCI service it is necessary to enter into a separate agreement with UBS.  You have carefully considered this matter and have elected the security procedure indicated below.

(You must choose one of the following options (each, a "Procedure") by checking the box beside that option.)

1.  ☐  Depositor(s) hereby elect(s) to transmit Operative Instructions to UBS the encrypted security procedure available through Keylink/SCI and agree(s) to complete the Keylink/SCI contract to be provided by UBS.

OR

2.  ☐  Depositor(s) hereby elect(s) to utilize an alphanumeric code ("Code") security procedure verification and authentication of Operative Instructions as well as any other instruction concerning the Accounts as described in greater detail below (all such instructions, collectively, the "Instructions").

PROVISIONS APPLICABLE TO THE CODE SECURITY PROCEDURE:

Depositor(s) agrees, having elected the Code security procedure, that the Code to be used to verify the authenticity of Instructions shall be the following:

Code: _____

(We suggest using a Code that is both unique and easy to remember, consisting of letters, numbers or a combination of both.)

Depositor(s) understand(s) and agree(s) that this Code must always be used when giving oral, written, telephone or fax Instructions to the Bank.  Depositor(s) will give UBS five days' prior written notice of any change in the Code.  Until UBS has received such notice, it is authorized to continue to accept Instructions and verify the same by the Code previously designated.

OR

3.  ☒  Depositor(s) refuse(s) security procedures suggested and offered by UBS and agree(s) to be bound by any Instructions, whether or not authorized, which appear to be issued by Depositor(s).  Depositor(s) hereby specifically discharge UBS from all responsibility for whatever consequences may result from accepting any and all Instructions solely on the basis of voice recognition, signature verification or facsimile under Depositor(s) sole responsibility and risk.

IF NO BOX IS CHECKED, YOU WILL BE DEEMED TO HAVE REFUSED SECURITY PROCEDURES SUGGESTED AND SELECTED OPTION 3 ABOVE.

You agree that the Procedure selected constitutes a commercially reasonable method of providing security against unauthorized Instructions which may be given to UBS concerning your Accounts.  You agree to be bound by any Instructions, whether or not authorized, issued in your name and accepted by UBS in compliance with the Procedure selected.  UBS reserves the right, in its sole discretion, to refuse to act upon Instructions if it believes that such Instructions have not been authorized by you, if it believes there may have been a security breach with respect to the Accounts or if it is unable to verify the Instructions in accordance with this section. You agree to indemnify and hold UBS harmless from and against any and all liability and expenses incurred by UBS in, or arising from, UBS's execution of Instructions believed by UBS in good faith to have been given by you, or a person having authority to act over the Accounts, provided UBS has complied with the Procedure selected.

The Procedures and other terms specified herein may also be applied to amendments and cancellations of Instructions.  It is understood that these Procedures are designated to verify the authenticity of, and not to detect errors in, the Instructions.

UBSMARTINEZ00140

CONFIDENTIAL TREATMENT REQUESTED

New    k Branch and Miami Branch

**5 Shareholder Communications Act of 1985 (applicable only to accounts holding securities)**

U.S. Securities and Exchange Commission regulations require that the Bank disclose to the issuer of a security upon request the client's name, address and position with respect to a security held in custody for the client unless the client objects to disclosure.

☐ I/we authorize the Bank to release my/our name(s), address(es) and share positions to requesting companies whose stock I/we own.

☒ I/we DO NOT authorize the Bank to release my/our name(s), address(es) and share positions to requesting companies whose stock I/we own.

FAILURE TO RESPOND TO EITHER CHOICE REGARDING THE SHAREHOLDER COMMUNICATIONS ACT SHALL BE DEEMED AUTHORIZATION TO DISCLOSE SUCH INFORMATION.

Regardless of the box checked above, proxies, other proxy soliciting materials, information statements and annual or other periodic reports that we receive with respect to your shareholdings (collectively, "Proxy Materials") will be forwarded to you unless you check the box below. BEFORE CHECKING THE BOX BELOW, YOU SHOULD CONFIRM THAT BY DOING SO YOU ARE NOT VIOLATING ANY FIDUCIARY DUTY ON YOUR PART THAT EXISTS BY LAW OR BY CONTRACT.

☒ I/we direct the Bank to NOT forward any Proxy Materials to me/us. The Bank may destroy such Proxy Materials.

**6 Affiliation With Certain Entities**

If you are employed by or associated with any of the following, whether U.S. or foreign, specify its name below (if none, state "None"): any NASD member; any exchange or any corporation of which any exchange owns a majority of the capital stock; any member or firm registered on any exchange; any bank, trust company, insurance company; or any company or individual dealing, either as broker or principal, in stocks, bonds or any other securities, commodities, commercial paper or other financial instruments or assets.

_____ NONE _____

If you are, or any relative of yours is, an employee of UBS AG or any of its affiliates (including UBS International Inc., UBS PaineWebber Inc. and UBS Warburg LLC), specify the employee's name, employer and location below (if none, state "None"):

_____ NONE _____

Specify any publicly traded company of which you or an immediate family member is a control person, such as a director, 10% shareholder or policy-making officer (if none, state "None"):

_____ NONE _____

[Remainder of page intentionally left blank]

UBSMARTINEZ00141

CONFIDENTIAL TREATMENT REQUESTED

New York Branch and Miami Branch

ORIGINAL

**7  Signature Card**                                        Account No. _Ya - 202440_

Account Name _EMILIO MARTINEZ MANAUTOU_

ALL DEPOSITORS AND PERSONS WHO HAVE BEEN APPOINTED UNDER A POWER OF ATTORNEY MUST SIGN IN THE
APPROPRIATE SPACES BELOW:

**Sole Signature**

1.   Last Name, First Name

     Print Name _EMILIO MARTINEZ MANAUTOU_   Signature _____

2.   Last Name, First Name

     Print Name _____   Signature _____

3.   Last Name, First Name

     Print Name _____   Signature _____

4.   Last Name, First Name

     Print Name _____   Signature _____

**If Joint Signature, any _____ of**

1a.  Last Name, First Name

     Print Name _____   Signature _____

2a.  Last Name, First Name

     Print Name _____   Signature _____

3a.  Last Name, First Name

     Print Name _____   Signature _____

4a.  Last Name, First Name

     Print Name _____   Signature _____

[Remainder of page intentionally left blank]

UBSMARTINEZ00142

CONFIDENTIAL TREATMENT REQUESTED

New   k Branch and Miami Branch

**8 Request to Open a Totten Trust Account (optional)**

ALL DEPOSITORS, PARTICULARLY U.S. DEPOSITORS, SHOULD CONSULT THEIR ESTATE-PLANNING ADVISOR BEFORE OPENING TOTTEN TRUST ACCOUNTS.

Funds held in a Demand Deposit Account, a Foreign Currency Deposit Account or a Fixed Term Deposit Account may be held in the form of a Totten Trust for the benefit of one or more beneficiaries. Pursuant to this application, you are able to establish accounts which may be held as a Totten Trust as well as accounts which may not be held as a Totten Trust. YOU UNDERSTAND AND AGREE THAT CUSTODY, PRECIOUS METAL AND INVESTMENT MANAGEMENT ACCOUNTS ESTABLISHED FOR YOU WILL NOT BE MAINTAINED AS TOTTEN TRUSTS.

A Totten Trust Account is a tentative trust of the deposit made in the account and any and all additions from whatever sources received, revocable at will by the Depositor during the Depositor's life and payable to the Depositor in whole or in part during his/her life, but any balance remaining after the Depositor's death shall be payable to the beneficiary(ies) mentioned in this section, in equal shares and at the same time if all are surviving, or to the survivors of them in equal shares and at the same time, or to the sole survivor if only one survives the

Depositor. During his/her lifetime, the Depositor is the sole owner of the account and its balance. If the Totten Trust is established in the name of two or more persons, the term "Depositor" shall be deemed to refer to each of the undersigned Depositors in whose names the account is held, either of them or the survivor(s) among them.

The Bank is hereby instructed to hold funds in the accounts checked below as a Totten Trust:

☐ Demand Deposit and Overnight Account

☐ Foreign Currency Deposit Account

☐ Fixed Term Deposit Account

☐ Call Account

☐ _____

☐ _____

☐ _____

**For each beneficiary, please indicate first name, last name, date of birth and address.**

IN EQUAL SHARES FOR THE BENEFIT OF:                 ADDRESSES OF BENEFICIARIES

Beneficiary 1 _____            _____

Date of Birth _____            _____

Beneficiary 2 _____            _____

Date of Birth _____            _____

Beneficiary 3 _____            _____

Date of Birth _____            _____

Beneficiary 4 _____            _____

Date of Birth _____            _____

Beneficiary 5 _____            _____

Date of Birth _____            _____

Beneficiary 6 _____            _____

Date of Birth _____            _____

04/03-apindiv                  **UBS Private Banking**                  Page 6 of 10

UBSMARTINEZ00143

CONFIDENTIAL TREATMENT REQUESTED

New   k Branch and Miami Branch

---

**9  Financial Information and Investment Objectives**

FOR JOINT ACCOUNTS, PLEASE PROVIDE HOUSEHOLD INFORMATION. THIS INFORMATION WILL BE KEPT STRICTLY CONFIDENTIAL.

**Financial Information (all amounts are expressed in U.S. dollars)**

Estimated Net Worth (excluding residences)

- ☐ Up to $500,000
- ☐ $500,000-1,000,000
- ☐ $1,000,000-3,000,000
- ☐ $3,000,000-5,000,000
- ☐ $5,000,000-10,000,000
- ☒ Over $10,000,000

Estimated Annual Income (before taxes)

- ☐ Up to $200,000
- ☐ $200,000-500,000
- ☒ $500,000-1,000,000
- ☐ $1,000,000-5,000,000
- ☐ $5,000,000-10,000,000
- ☐ Over $10,000,000

**Account Investment Objectives (see definitions below)**

Return Objective (select one)

- ☐ Current Income
- ☐ Capital Appreciation
- ☒ Current Income and Capital Appreciation

Risk Profile (select a primary risk profile and, if desired, a secondary risk profile)

Primary Risk Profile (select one)

- ☐ Conservative
- ☒ Moderate
- ☐ Aggressive/Speculative

Secondary Risk Profile (select one if desired)

- ☐ Conservative
- ☒ Moderate
- ☐ Aggressive/Speculative

---

IN SPECIFYING YOUR ACCOUNT INVESTMENT OBJECTIVES ABOVE, PLEASE USE THE FOLLOWING DEFINITIONS:

**Return Objectives**

"Current Income": Investments seeking the generation of income.

"Capital Appreciation": Investments seeking growth of principal rather than the generation of income.

"Current Income and Capital Appreciation": Investments seeking both the generation of income and the growth of principal.

**Risk Profiles**

"Conservative": Seeks securities that are most likely to preserve principal with low risk.

"Moderate": Seeks greater potential returns; willing to accept higher risk of loss of principal.

"Aggressive/Speculative": Seeks the potential for significant appreciation; willing to accept a high degree of risk of loss of principal.

[Remainder of page intentionally left blank.]

UBSMARTINEZ00144

CONFIDENTIAL TREATMENT REQUESTED

New York Branch and Miami Branch

**10  Depositor Acceptance**

The Depositor(s) must sign below.  By completing and signing this application, you acknowledge and agree that:

- You have received, read and agreed to be bound by the General Terms and Conditions of Accounts and the other documents listed in Section 3 of this application, which shall govern your Accounts.

- You have been advised and understand that UBS Warburg LLC and UBS PaineWebber Inc. are indirectly wholly-owned broker-dealer subsidiaries of UBS. The primary activities of UBS Warburg LLC and UBS PaineWebber Inc. include underwriting and dealing in private sector debt and equity securities, underwriting and dealing in U.S. government securities, underwriting and dealing in derivatives involving both government and private sector securities and trading in foreign exchange options. The U.S. branches and agencies of UBS may from time to time express an opinion on the value or advisability of the purchase or sale of securities underwritten, distributed or dealt in by UBS Warburg LLC, UBS PaineWebber Inc. or other affiliates or in which any of them is making a market.

- Your initial and all future deposits are not insured by the Federal Deposit Insurance Corporation.

- The agreements and documents listed under Section 3 of this application are hereby incorporated by reference.  All Accounts (except Accounts at the Miami Branch), and all agreements and documents pertaining to those Accounts, shall be governed by and be subject to the laws of the United States and the State of New York.  Accounts established and maintained at the Miami Branch and agreements and

documents pertaining to those Accounts shall be governed by and be subject to the laws of the United States and the State of Florida.

- You agree to submit to the jurisdiction of the courts of the United States for the Southern District of New York and the courts of the State of New York with respect to proceedings concerning your Accounts (except Accounts at the Miami Branch).  You agree to submit to the jurisdiction of the courts of the United States for the Southern District of Florida and the courts of the State of Florida with respect to proceedings concerning Accounts maintained at the Miami Branch. .

- You irrevocably agree that the United States District Court for the Southern District of New York and the Supreme Court of the State of New York in the Borough of Manhattan, New York City, shall have exclusive jurisdiction over any suits brought by you against UBS concerning your Accounts (except accounts at the Miami Branch) and this application as it pertains to such Accounts.  You irrevocably agree that the United States District Court for the Southern District of Florida and the Circuit Court of the State of Florida in Dade County shall have exclusive jurisdiction over any suits brought by you against UBS concerning Accounts maintained at the Miami Branch and this application as it pertains to such Accounts.

---

**SIGNATURES**

**Depositor One**

Depositor One (Print Name) _EMILIO MARTINEZ MANAUTOU_

Date _5/28/03_                                Signature _____

**Depositor Two** (complete if a joint account)

Depositor Two (Print Name) _____

Date _____                         Signature _____

Additional Depositors must provide information and sign this application below.

04/03-apindiv                    **UBS Private Banking**                    Page 8 of 10

UBSMARTINEZ00145

CONFIDENTIAL TREATMENT REQUESTED

**Depositor Four** (complete if a joint account)

Name (first, last) ______________________

______________________

Legal Residence (street, city, state/province, zip/postal code, country)

______________________

______________________

______________________

Telephone

Home ______________________

Business ______________________

Fax ______________________

Nationality ______________________

Identification paper(s)

Type and No. ______________________

Place issued ______________________

Date ______________________

U.S. Social Security/U.S. Taxpayer ID No. (if any)

______________________

**Depositor Acceptance (Depositor Four)**

Depositor Four (Print Name) ______________________

Date ______________________ Signature ______________________

Bank use only

Accepted by Marissa Weinberger, Associate Director, Mexican Desk, Ext. 62645 CDH/LMH Ruedi Burri, Managing Director, UBS Wealth Management

Place/Date 2/1/04 c.3

CONFIDENTIAL TREATMENT REQUESTED

**Depositor Three** (complete if a joint account)

Name (first, last) ______________________

______________________

Legal Residence (street, city, state/province, zip/postal code, country)

______________________

______________________

______________________

Telephone

Home ______________________

Business ______________________

Fax ______________________

Nationality ______________________

Identification paper(s)

Type and No. ______________________

Place issued ______________________

Date ______________________

U.S. Social Security/U.S. Taxpayer ID No. (if any)

______________________

**Depositor Acceptance (Depositor Three)**

Depositor Three (Print Name) ______________________

Date ______________________ Signature ______________________

[Remainder of page intentionally left blank]

CONFIDENTIAL TREATMENT REQUESTED

Exhibit 2



# UBS

# Valuation as of 30 Nov 2007
## Trade Date Basis

**Mailing Address**

EMILIO MARTINEZ MANAUTOU TRUST

ATTN:LETIZIN M DE GONZALEZ
219 LAKERIDGE DR
SAN ANTONIO TX 78229



**CUSTODY ACCOUNT**

Portfolio Number:    **202440**
Base Currency:       **USD**
As of Date:          **30 Nov 2007**

**UBS AG**
101 Park Ave.
New York, NY 10178
www.ubs.com

**Your Client Advisor**
DAIA FEIGENWINTER
Tel: +1-212-916-2505
Email: DAIA.FEIGENWINTER@UBS.COM
or
EDUARDO RAMIREZ
Tel: +1-212-916-2642
Email: EDUARDO.RAMIREZ@UBS.COM

**Client Information**

| | |
|---|---|
| Name | DR. EMILIO MARTINEZ MANAUTOU TRUST |
| Account Number | YR -202440 |

**Your Investment Profile**

| | |
|---|---|
| Base Currency | USD |
| Objective | |
| Strategy | |
| Authority | |

WMID 002766 PAGE 1 OF 14 00000244

# UBS

## Asset Allocation

CUSTODY ACCOUNT

**UBS AG**
101 Park Ave.
New York, NY 10178
www.ubs.com

Portfolio Number:   **202440**
Base Currency:   **USD**
As of Date:   **30 Nov 2007**

**Your assets, shown by investment category and currency, valued in USD**

| Currency | Cash & Money Market | Bonds | Equities | Alternative Investments | Other Investments | Foreign Exchange | Total |
|---|---|---|---|---|---|---|---|
| USD | 4,955,437 | | | | | | 4,955,437 |
| | 100.00% | | | | | | 100.00% |
| **Total Gross** | 4,955,437 | | | | | | 4,955,437 |
| | 100.00% | | | | | | 100.00% |
| **Total Net** | 4,955,437 | | | | | | 4,955,437 |
| As at 30 Nov 2007 | | | | | | | |

WMID 002767 PAGE 00003 OF 00014 00000244

**Exhibit 3**

No. 2005PC2506

| | | |
|---|---|---|
| ESTATE OF | § | IN PROBATE COURT NUMBER 2 |
| | § | |
| DR. EMILIO MARTINEZ MANAUTOU, | § | OF |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## ORDER ADMITTING WILL TO PROBATE
## AND AUTHORIZING LETTERS TESTAMENTARY

On this day the Court heard the written Applications for Ancillary Probate of Foreign Will Probated in Domiciliary Jurisdiction and for Issuance of Ancillary Letters Testamentary filed by Letizia Cecilia Martinez Cardenas ("Applicant") in the Estate of Dr. Emilio Martinez Manautou, Deceased ("Estate"). In support of said Applications, there was presented in open Court the authenticated copy of the Will of Dr. Emilio Martinez Manautou, Deceased (the "Decedent") filed with the Court on August 11, 2005, along with an authenticated copy of the Final Decree and Writ by which said Will was previously admitted to probate in Decedent's domiciliary jurisdiction.

The Court, having heard the evidence and having reviewed the Will and the other documents filed herein, finds that all of the statements and allegations contained in the Application are true and correct; that notice and citation have been issued, served, and returned in the manner and for the length of time required by law; that Decedent is dead and that four (4) years have not elapsed since the date of Decedent's death; that this Court has jurisdiction and venue over Decedent's estate; that Decedent left a written Will, dated December 18, 2002, executed with the formalities and solemnities and under the circumstances required by law to make it a valid will; that the Will was previously admitted to probate in Decedent's domiciliary jurisdiction by Final Decree and Writ of the Mixed Court of First Instance of the Tenth Judicial District, State of Tamsulipus, Mexico; that said Final Decree and Writ admitting said Will to probate has never been modified or revoked by the Court in Decedent's domiciliary jurisdiction; that true and accurate English translations of Decedent's Will and of said Final Decree and Writ admitting it to probate in Mexico have been made by a qualified translator as provided by law and filed in these proceedings; that the Will was never altered, amended, or revoked by Decedent; that no objection to or contest of the probate of the Will has been filed; that all of the necessary proof required for the probate of the Will has been made; and that the Will is entitled to ancillary probate in this state pursuant to Section 95 of the Texas Probate Code.

The Court further finds that in the Will, Decedent named Letizia Cecilia Martinez Cardenas to serve as Executor without bond, but did not designate her to serve as an Independent Executor of Decedent's Estate. Pursuant to Section 145(c) of the Texas Probate Code, all of the distributees of Decedent's Estate (i) have agreed on the advisability of having an independent administration; (ii) have collectively designated the said Letizia Cecilia Martinez Cardenas to serve as Independent Executor; and (iii) have requested that no other action be had in this Court in relation to the settlement of Decedent's Estate other than the probating and recording of Decedent's Will and the

VOL 0514 PG 0293



return of the statutory Inventory, Appraisement, and List of Claims of Decedent's Estate as provided by law.

The Court further finds that Applicant has filed an Appointment of Resident Agent in these proceedings and is entitled to receive Ancillary Letters Testamentary as a matter of law pursuant to Section 105 of the Texas Probate Code. The Court further finds that Applicant is also duly qualified and not disqualified by law to act as Independent Executor of Decedent's Will and Estate and to receive Ancillary Letters Testamentary as such.

The Court further finds that a necessity exists for the administration of this estate; that no interested person has applied for the appointment of appraisers and none are deemed necessary by the Court; and that neither the State of Texas nor a governmental agency of the State nor a charitable institution is named in the Will as a direct devisee or distributee.

It is therefore ORDERED, ADJUDGED, and DECREED that the authenticated Will of Dr. Emilio Martinez Manautou, Deceased, dated December 18, 2002, and on file with this Court, is admitted to probate, and the Clerk of this Court is ORDERED to record the Will, together with the Application, and the other documents filed in these proceedings in the minutes of this Court.

It is further ORDERED, ADJUDGED, and DECREED that no bond or other security is required and that upon the taking and filing of the Oath required by law, Ancillary Letters Testamentary shall issue to Letizia Cecilia Martinez Cardenas who is appointed as Independent Executor, without bond, of the Decedent's Will and Estate, and that no other action shall be had in this Court other than the return of an Inventory, Appraisement, and List of Claims as required by law.

It is further ORDERED that there is no necessity for the appointment of appraisers for this Estate and the same are hereby waived.

SIGNED on this 22 day of August, 2005.

_____
Judge Presiding
MIC O K

FILED
AUG 2 2 2005

Prepared By:

GIORDANI, SCHURIG, BECKETT & TACKETT, L.L.P.
100 Congress Avenue, 22nd Floor
Austin, Texas 78701
Telephone:   (512) 370-2720
Telecopier:  (512) 370-2730

ATTORNEYS FOR APPLICANT

2

V 0514 0294

**Exhibit 4**



Internal Revenue Service
PO Box 331   DP 605S
Bensalem, PA 19020

Contact Person:   Joan Garlick
Badge Number:    28-07694
Telephone:   1-215-516-3255
Fax:   1-215-516-6047

Date:   11/24/06

### Estate Tax Closing Document
### (Not a Bill for Tax Due)

LETIZIA MARTINEZ DE GONZALEZ
% WILLIAM D. SIGNET, ESQ.
4100 FLAGSTAFF DRIVE
AUSTIN, TX   78759

Estate Name:   EMILIO MARTINEZ MANAUTOU
Social Security Number:   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W
Date of Death:   12/24/04

We have determined the following:

| | | |
|---|---|---|
| TENTATIVE TAX | $ | 1,528,276.00 |
| UNIFIED CREDIT | $ | 13,000.00 |
| STATE DEATH TAX CREDIT | $ | -0- |
| FOREIGN DEATH TAX CREDIT | $ | -0- |
| NET ESTATE TAX | $ | 1,515,276.00 |

These figures do not include any interest or penalties that may be charged.

Please keep this document in your permanent records. You may need it to complete administration of the estate, such as: close probate proceedings, transfer title to property, and settle state taxes. Keep it with your cancelled check(s) to show that you have met the estate tax obligation. **Proof of payment in the amount shown above releases you of personal liability (IRC 2204). If the time for payment is extended under section 6161, 6163 or 6166, personal liability is not released until full payment has been received.**

We will not reopen this return unless you notify us of changes to the return, or there is evidence of misrepresentation of a material fact, a clearly defined substantial error based upon an established Service position or a serious administrative omission (See IRC 7121).

*Deborah Reilly*

Field Director,
Philadelphia Service Center

**Exhibit 5**

# General Terms and Conditions of Accounts

**This document includes the Notice About Joint Accounts, Precious Metals Disclosure Statement, Client Privacy Notice and Online Access Terms and Conditions.**

This agreement covers all accounts maintained at any office of UBS AG in the United States.

The terms "we," "us," "our" and "the Bank" mean UBS AG.

The terms "Depositor," "you" and "your" mean the person or persons, corporation, partnership, trust or unincorporated association in whose name this account is held, any survivor(s), assign(s) or heir(s) of the Depositor as well as anyone that you appoint as agent.

**Statements**

Unless you notify the Bank in writing within 60 days of the closing date of any statement of any claimed errors in such statement, of any forged signatures upon any returned checks or of any unauthorized transactions, the statement shall be considered correct and the Bank shall not be liable for any transactions undertaken or payments made and charged to the account or for any other error in any statement as rendered to you.

**Deposits**

The Bank, at any time, in its discretion, may refuse any deposit, return all or any part thereof, limit the amount which may be deposited or close the account(s). When notice requesting withdrawal of a deposit or any part thereof is given to the Bank, interest, if any, shall cease immediately upon such deposit or part thereof. Deposits may be made only at the office where the account is maintained. The Bank reserves the right to refuse to process checks or drafts drawn to the order of third parties, and to decide on a case-by-case basis whether or not to accept checks with two or more endorsements.

**Remittances in Foreign Currencies**

Remittances in a currency for which you do not maintain a corresponding foreign currency Demand Deposit Account will be credited, at the Bank's discretion, to an already existing account or maintained in the currency received.

**Foreign Currency Holdings**

In the event you deposit or request us to hold on deposit funds of a foreign currency, we will hold such funds with one of our correspondent banks in the country of the currency involved or elsewhere. These funds will be held in our name but for your account and at your risk. They may be commingled with our other assets at such correspondent banks.

You can withdraw the foreign currency funds in your account at any time, but only by our foreign currency draft made payable to you or anyone you select. We are not liable for any loss or damage to you resulting from any act or event beyond our control regarding your foreign currency holdings. These acts include: government decree, political or economic disturbances, embargoes, war, revolution, expropriation or confiscation, fluctuation of exchange rates, mistakes or delays by cable or any other communication companies, any loss or mutilation in transmission or remittance, or any failure, insolvency, suspension, bankruptcy, delay, default or neglect on the part of our correspondent banks. If any of our correspondent banks holding funds in our name fails to make payments for any reason on a foreign currency account in which you have an interest, we will only pay you a pro rata share of any amount we finally receive from the correspondent. We will determine your share by considering how much interest (according to our books) we, our other clients and you hold in those funds.

**International Banking Facility**

If you are a non-U.S. resident (either a natural person or a legal entity), funds may be placed on deposit with the International Banking Facility of the Bank. Such deposits may be used only to support your non-U.S. operations or, in the case of a corporation, its foreign affiliates. Extensions of credit by such International Banking Facility may be used only to finance the non-U.S. operations of a non-U.S. borrower or its affiliate(s) located outside the United States.

**Withdrawals**

Withdrawals from an account may be made only at the office where the account is maintained and only upon presentation of withdrawal orders satisfactory to the Bank as to form and signature.

Withdrawals, other than withdrawals by check from Demand Deposit Accounts, are permitted only through payment to the Depositor but not to any other person, whether or not acting for you, except to a person, other than the Bank, holding a general power of attorney granted by you. Payment may be made over the counter, through the mails or otherwise. The Bank reserves the right at any time to require at least seven days' notice in writing of intention to withdraw a deposit, or any part thereof, but it may at its own option make payment without such notice, in which event such payment will not be deemed a waiver of its right to require such notice as to other withdrawals. No such notice is required for withdrawals from Demand Deposit Accounts.

## Checks and Drafts
You may draw checks against Demand Deposit Accounts but may not draw checks or drafts against other types of deposit accounts. The Bank will not be responsible if, through inadvertence, accident or oversight, the Bank prematurely honors any postdated check.

## Stop Payment Orders
Stop payment orders are noted upon receipt of request and the Bank endeavors to give effect to all such requests provided that such requests (a) are received in time to afford the Bank a reasonable opportunity to act before the item is honored, (b) are in writing duly signed, and (c) contain sufficient information to accurately identify the check(s) in question. Such requests are effective for six months from date of receipt unless renewed in writing.

## Wire Transfer Instructions
When executing wire transfer instructions for a Depositor, the Bank may rely on the identifying account numbers provided by the Depositor of any beneficiary or of any intermediate or beneficiary bank, rather than the names thereof. The Bank shall have no duty to detect any inconsistency between name and number or in any way be responsible for such inconsistency.

## Interest Paid on Funds on Deposit
Interest will be computed and credited at such time(s), for such period(s), on such amount(s), at such rate(s) and according to the type of deposit as may be fixed, in conformity with law, by the Bank. No interest will be paid (1) on any balance or part thereof which shall have been requested be withdrawn, or (2) upon any balance less than the minimum balance fixed by the Bank or (3) on Demand Deposit Accounts.

## General Lien, Right of Set-Off and Overdrafts
Any and all monies and property whatsoever belonging to you or in which you have an interest held by UBS AG at any office, here or abroad, or carried for your account shall be subject to a general lien for the discharge of your obligations to the Bank, however arising and without regard to whether or not the Bank has made advances to you.

In the event that there is an outstanding amount owed by you to the Bank, the Bank may, in its discretion, without prior notice to you, apply any monies or any other property on deposit with any office or affiliate of the Bank, whether individual or joint, in which you may have an interest, to satisfy such indebtedness.

If the Bank charges against any account any item or payment order payable from the account or charges back to an account any item previously credited, and such charge creates an overdraft, the amount of such overdraft shall represent a loan to you repayable on demand and, until paid, shall bear interest at the Bank's prevailing rate of interest for overdrafts as in effect from time to time. The Bank may deduct from the account any such interest. It is expressly agreed that payment by the Bank of any item which creates an overdraft shall be in its sole discretion and that neither the foregoing provision concerning interest on overdrafts nor any other provision in this agreement authorizes, or shall be construed to authorize, you to draw any item on the account against insufficient funds.

## Disputes Involving the Account
If the Bank believes, in its sole judgment, that following the Depositor's instructions might at any time expose the Bank to any claim, suit, loss, expense or other liability, the Bank may refuse to act on such instructions or request indemnity (and security for it) satisfactory to the Bank before following the instructions. If the Bank becomes aware of a conflict of demands or a dispute with respect to all or any part of any account or the Bank receives inconsistent instructions with respect to it, the Bank, in its sole discretion, may require the signatures of all depositors or signatories for any withdrawal or other disposition of funds in any account or take whatever other action the Bank considers advisable (or which the Bank's counsel recommends) until the conflict or inconsistency is resolved to the Bank's satisfaction. Such action may include freezing the funds in any account, placing them in a suspense account or interpleading them.

**Claims Made to the Bank**

If claim is made against the Bank for the recovery of any part of any collected item (including any item cashed for the Depositor) after final payment thereof, on the ground that such item was altered or bore a forged or unauthorized endorsement or was otherwise not properly payable, the Bank may withhold the amount thereof from the account until final disposition of such claim and charge to the account or otherwise recover from you whatever amount the Bank may determine to be its liability on account of such claim.

**Legal Process; Collection Charges**

A fee will be imposed for any legal process served on the Bank with respect to each account maintained and the Bank may charge an additional fee for any expenses incurred and for consultation with in-house attorneys, as well as for outside counsel whom the Bank may consult.

Should it be necessary to commence collection proceedings through a collection agency or attorney, or the Bank's attorneys, all reasonable fees, commissions, charges and other costs will be added to the amount which is owed to the Bank.

**Consulting Legal Counsel; Freezing of Account**

If the Bank deems it necessary, the Bank may, at the Depositor's expense, consult with legal counsel regarding the Depositor's account and/or retain legal counsel to appear in any legal proceeding affecting the Depositor's account in which the Bank is a party. The Bank is not obligated, however, to institute, defend or engage in any legal proceeding involving the Depositor's account unless the Bank is first indemnified to the Bank's satisfaction.

Without limiting the foregoing, the Bank specifically has the right to consult with legal counsel in any jurisdiction which it deems necessary for the purpose of determining your successor(s), heir(s), executor(s), administrator(s) and distributee(s) prior to distributing the assets in your account(s) upon your death.

The account(s) will be debited for any and all fees, expenses, legal liabilities, losses, demands, damages, costs, charges, counsel fees or other expenses incurred by the Bank in connection with the foregoing.

You agree that, upon the death of any accountholder, your account may be frozen until the Bank determines to its satisfaction (i) that all U.S. estate taxes due in connection with such accountholder's death have been paid, (ii) that no

such taxes are payable or (iii) that the Bank has no liability for such taxes.

**Appointing Agents**

We will also follow instructions from anyone you appoint as your agent for your account, without further inquiry or responsibility on our part. This includes dealing with, controlling, or disposing of the account, to the same extent as if the account were owned solely by the person you appoint. Withdrawals, transfers or deliveries free of payment may only be made by an agent holding a general power of attorney granted by you.

An appointment will become effective only after you have completed the proper documents to our satisfaction and we have received them. If your account is a joint account, such documents need not be signed by all accountholders, but may be signed by any person or persons otherwise authorized to sign on the account.

**Service Charges**

The account(s) will be subject to the Bank's service charges as in effect from time to time.

**Gifts and Assignments**

The Bank need not recognize any gift, assignment or other transfer in whole or in part of the amount due a Depositor unless it shall have received written notice of such gift, assignment, or transfer in form satisfactory to it, accompanied by the original of the document by which such gift, assignment or other transfer shall have been effected.

**Change of Address**

You agree to notify the Bank promptly in writing of any change of address. All notices and correspondence will be mailed unless you direct otherwise to you at the address the Bank has on file.

**Waivers**

No waiver or modifications of this agreement shall be deemed to be made by the Bank unless in writing and signed on its behalf and each waiver or modification, if any, shall apply only to the specific instance involved.

**Amendments**

This agreement, and any other rule or regulation of the Bank applicable to the account, may be amended or supplemented by the Bank at any time or times by mailing appropriate notice thereof to you in accord with your mailing instructions or by posting notice thereof for a reasonable period of time in any conspicuous place at the office where the account is maintained.

## Successors

This agreement and your obligation thereunder shall be binding on you, and also on your successor(s), assign(s), heir(s), executor(s), administrator(s) and distributee(s).

## Applicability of the Terms and Conditions

The provisions of the General Terms and Conditions set forth herein shall govern the overall relationship with you, including custody account services. In instances where you have requested the Bank to provide additional services, the Bank's written agreements applicable to these services shall apply, except that if such agreement is silent as to any particular issue or if no additional written agreement is utilized, the General Terms and Conditions shall govern.

## Indemnity

You agree to indemnify us for all claims made against us, and all fees, expenses, taxes, legal liabilities, losses, demands, damages, costs, charges, counsel fees or any other expense we sustain or incur arising out of this agreement or your accounts.

The Bank shall not be liable for errors in judgment or any action or omission to act in connection with this agreement, in the absence of the Bank's willful misconduct or gross negligence.

## Recording

The Depositor authorizes the Bank, in the Bank's discretion, to record any telephone conversation between the Bank and the Depositor, but the Bank has no duty to do so.

## Custody Accounts

The additional terms and conditions set forth below shall govern the relations between the Bank and the Depositor with respect to any custody account.

### Authorization for Custody Accounts

You authorize us to open a Custody Account in your name, and to deposit, hold and dispose of any property in this account according to your instructions. This authorization is subject to the provisions in this agreement, unless we receive signed, written instructions from you stating otherwise and we have agreed thereto. The term "property" includes, but is not limited to, securities, money market instruments and precious metals.

### How We Administer Your Custody Account

We will buy, sell, exchange, deliver, receive, deposit, or withdraw securities, or any other property in your account, free or against payment,

according to your instructions. Incidental to our duties hereunder, we may express an opinion on the value or advisability of the purchase or sale of securities underwritten, distributed or dealt in by branches, subsidiaries and affiliates of UBS AG, including UBS Securities LLC or UBS Financial Services Inc., or in which any of such entities are making a market.

### Choosing brokers and dealers.

In cases where we select or recommend the broker or dealer, we may execute your orders through a broker or dealer of our choice, including UBS Securities LLC, UBS Financial Services Inc. and branches of the Bank worldwide, as well as other subsidiaries and affiliates of UBS AG authorized to effect such transaction, which broker, dealer, branch, subsidiary or affiliate may be acting as agent, underwriter, market maker or trading for its own account or the account of another customer on the other side of the transaction. Each entity will receive its customary commission or other compensation, including profit or spreads, for each transaction. Whether or not we select a broker, we are only responsible for the property we actually receive from a purchase, or proceeds we actually receive from a sale. We are not obligated to inform you if we have not received delivery of property or proceeds at or near the delivery date.

### Account agreements.

When we select a broker, we will do so using good-faith judgment and considering prices, commission rates and other relevant factors. We may select a broker that charges commissions higher than the lowest available rate that another broker might have charged, or that the same broker might otherwise have charged, in part because of research and execution provided to us by the broker. Those services may include electronic services, such as Bloomberg and Reuters, that provide quotations and news and financial information about companies, industries and markets. We may make that information available to you, but we also may use it for providing services to other clients or for other purposes unrelated to providing advice or recommendations to clients.

### Execution of orders.

Orders to buy or sell securities may not always be executed in the order that they are received by us. Priority of execution may be given to transactions for investment management clients or to trades which are time-sensitive because of market closings or volatility.

*Investment companies and structured products.*
You specifically authorize the Bank to invest for your account, upon your instructions, in investment companies and Structured Products in which you are eligible to participate, notwithstanding that we or an affiliate (including a subsidiary or another branch of UBS AG) may act as investment advisor, general partner, sponsor or distributor, or provide any other service to those investment companies, or may be the issuer of or have any other role with respect to those Structured Products. In addition to the compensation paid to us by you that is permitted hereunder, those investment companies have their own fees and expenses as disclosed in their prospectuses or other offering documents, including investment advisory or other fees that may be paid to us or an affiliate, and issuers of and other parties (which may include our affiliates) having a role with respect to Structured Products may receive fees or other compensation, including profit or spread, in connection with such Structured Products or sales thereof.   We may receive payments of management, distribution, service and/or other fees from those investment companies and may receive from our affiliates a portion of the advisory or other fees paid to the affiliates by those investment companies, and may receive retrocessions or other payments from our affiliates or non-affiliated parties in connection with sales of Structured Products; thus we may have an incentive to purchase or recommend those investment companies or Structured Products instead of other investments.

"Structured Products" are investment products, which may be commonly referred to as structured products, synthetic securities, hybrid instruments or otherwise, (i) that combine two or more financial instruments or assets (one or more of which may be a derivative) and/or (ii) whose value is dependent on the performance of one or more underlying securities, commodities or other assets.

*Shareholder materials; certain tender offers.*
Proxy materials and annual reports for U.S. registered securities, which we or our nominees receive, will be forwarded to you in accordance with the relevant provisions of the Shareholder Communications Act of 1985 and its implementing regulations.    Shareholder materials for foreign securities may be forwarded to you as per separate arrangement.  We are not obligated to act on proxy materials or exercise any right to vote any securities.

It is the Bank's policy to refrain from forwarding to you tender offers (i) for less than 5% of a company's equity securities, (ii) not forwarded to the Bank by any sub-custodian, (iii) about which, in the Bank's reasonable opinion, adequate information is not available, or (iv) that the Bank reasonably believes are not in your best interest, and the Bank shall have no liability to you in any such instance.

*Holding securities.*
We may hold any securities or other property from time to time deposited by you within or without the United States, registered in or transferred into our name or the name of our nominee or nominees or the name of one or more subcustodians or nominees thereof, or we may either directly or through subcustodians retain them unregistered or in form permitting transferability by delivery, or deposit or arrange for the deposit of the certificates representing such securities in bulk with a central certificate depository, so that transfer of ownership of or other interests in such securities may be made by bookkeeping entry on the books of such depository. We will use reasonable care in accordance with industry practices in selecting subcustodians, but we will not be responsible for their acts or omissions, or the acts or omissions of any depository or clearing facility.

*Valuation of certain investments.*
For certain investments that your portfolio may hold, the date as of which the investments' price or net asset value (NAV) is determined may fall in one statement period, while we may receive the price or NAV information only in the following statement period, causing the investments' closing price as reflected on the earlier statement to differ from the

opening price as reflected on the following statement.

*Clearing for your account.*
We shall receive and pay for securities or other property purchased by you and deliver securities and settle transactions in accordance with industry practices, for your account and risk, notwithstanding the fact that payment and delivery may not be simultaneous. When we accept payment in the form of checks, those checks do not have to be certified or bank cashier checks and we shall not be liable for the collection thereof.

*Charges and credits to your account.*
If you instruct us to purchase or receive property against payment, we will charge your account. If that account has insufficient funds, we can collect the remaining amount from any other account you have with us.

We will collect certain proceeds for your account, including dividends, interest, and proceeds from sales of property which have become due and collectible. We will credit the funds to your account and hold them until you instruct us to do otherwise. All items are credited to your account subject to final payment or delivery. We reserve the right to debit your account should we not receive the funds or securities in question.

So we can collect income from your property for you promptly, you authorize us to act as your agent and execute all the necessary certificates of ownership required by the U.S. Department of Treasury income tax regulations. We will not, however, claim any personal exemptions.

*Currency of dividends and bond interest.*
Cash dividends and bond interest received by us with respect to your portfolio are, despite the currency of the investment or that of the payment received by us, credited to your account in U.S. dollars (after conversion, if necessary) unless you have otherwise agreed with us in writing.

*Termination of or payments with respect to investments.*
We are not obligated to notify you of any termination of, or any payment with respect to, any investment held in your account (whether such investment is issued by UBS AG or any of its affiliates or by a third party). Furthermore, we will not be responsible for any loss, cost or damage (including, but not limited to, any loss of opportunity) associated with or directly or indirectly resulting from your failure to receive notice of any such termination or payment.

*Securities Not Deposits; Not Guaranteed by Bank*
Any securities or other instruments discussed, offered or sold by the Bank or its affiliates or subsidiaries are not deposits of the Bank, are not insured by the United States Federal Deposit Insurance Corporation (FDIC), are not obligations of or guaranteed by the Bank or its affiliates or subsidiaries (except as expressly disclosed to the Depositor in writing), and are subject to investment risks, including possible loss of the principal amount invested.

*Sophistication; Ability to Evaluate and Accept Risk of Loss*
You represent and acknowledge that you are a sophisticated investor and have such knowledge and experience in financial matters so as to be capable of evaluating the merits and risks of investments in securities and other instruments that you may direct us to purchase or sell for the custody account. You further represent and acknowledge that you are familiar with the risks of such investments, including risks of purchasing and selling investments of issuers outside the United States and those denominated in currencies other than the United States dollar, and that you have the financial resources to absorb any economic loss that may be associated with the purchase or sale of any securities or investments which you may direct us to effect for the custody account.

Each time you direct us to purchase or sell a security or other investment for the custody account, you shall be deemed to have represented to us that you have made an independent decision, without reliance on us, to engage in the transaction, and have obtained such information about the security or instrument as you deem sufficient and relevant to make an investment decision.

Should you not have completed the section of your account application entitled "Financial Information and Account Objectives," you agree that we shall have no responsibility or liability to you for the suitability of your investment decisions.

*Regulation S Offshore Investor (Non-U.S. Clients Only)*
With respect to any transaction involving an offering of securities being made in accordance with Regulation S under the Securities Act of 1933 ("Securities Act"), if a purchaser, you represent and warrant (A) that (i) you are outside the United States, (ii) you are not a U.S. person and are not

acquiring securities for the benefit of a U.S. person, and (iii) you will resell the securities only in accordance with Regulation S or pursuant to a registration statement or an exemption from registration under the Securities Act or (B) that (i) you are acquiring the securities for the account of a non-U.S. person who holds a discretionary account with you and (ii) such non-U.S. person has certified to you that he/she will resell the securities only in accordance with Regulation S or pursuant to a registration statement or an exemption from registration under the Securities Act.

<u>Notice Regarding U.S. Equities (Non-U.S. Clients Only)</u>
Please be advised that under current U.S. law a non-U.S. client's direct holdings (i.e., not through a non-U.S. investment company) of U.S. equity securities may be subject to U.S. estate taxes. You are strongly advised to consult your tax adviser should you own or plan to own such securities.

<u>Your Obligations</u>
You agree to:

- our fee schedule, as amended from time to time;

- be responsible for all cash advances and interest thereon, which we make based on instructions from you or your agent; and

- be responsible and indemnify us for all fees and expenses, including legal fees, losses, damages, taxes, charges, claims, and liabilities we incur when administering your account, or when acting on your instructions.

We are authorized to charge any account you may have with us for any of these items. If we advance funds to you for any purpose as a result of your or your agent's order or instruction, or if we incur, sustain, or are assessed with any losses, damages, taxes, charges, fees, expenses, assessments, claims, or liabilities (including, without limitation, legal fees), we may use as security any property at any time in your account. Any property in your account may also be set off against the amount you owe us. If the property in your account is insufficient, we may use as security any property at any time in any account you may have with any office or affiliate of the Bank. We may also use that property as a set off against the amount you owe us.

<u>Our Obligations</u>
We are not liable for any loss or damage to you resulting from any act or event beyond our control

regarding the property in your account. These acts include: government decree, political or economic disturbances, embargoes, war, civil unrest, expropriation, or confiscation. We are not liable in any way for any disposition of your property in your account if it is done according to your or your agent's instructions. We are not liable for acts or omissions or inability to perform its obligations of any broker, dealer or other counterparty, affiliated or unaffiliated, or other agents we select in good faith.

**NOTICE ABOUT JOINT ACCOUNTS**

Any account opened in the name of more than one person will be a joint account with the right of survivorship. The law presumes that each person named on a joint account owns an equal share of the account, including any interest earned, even if only one accountholder contributes all of the money, securities or other property in the account or the deposits are otherwise unequal. While all of the joint depositors named on the account are living, we may (unless the signature card specifies joint signatures) honor each check, other payment order or withdrawal request from any one of them (or from an agent appointed by any one of them), and may release the entire account to any one of the joint depositors. After we learn of the death of a joint depositor, we may treat the account as the sole property of the survivor(s), and we may under certain circumstances honor checks or payment orders or withdrawal requests from the survivor(s). In the case of legal process, we may be required to remit funds held in the joint account to satisfy a judgment entered against, or other valid debt incurred by, any owner of the account.

Furthermore, we may, following instructions given by any owner of the account in accordance with the account's signature card, open or close, or subscribe to or cancel, in the names of all joint owners, any account or service (including any Investment Management Account) offered by the Bank.

Unless we receive written notice signed by any owner of the account instructing us not to pay checks or permit any withdrawal of a joint deposit (or any addition or accrual thereon), we shall not be liable to any owner for honoring checks or other orders drawn by, or withdrawals requested by, or taking any other lawful action requested by, any owner of a joint account in accordance with the account's signature card. After receipt of notice signed by an owner of the account instructing us not to pay checks or permit any withdrawals from

the account, we may require the signatures of all the joint depositors before we allow any further payments or withdrawals from the account.

Unless specifically directed in writing to the contrary, deposits of funds of a joint depositor may be made and credited to the joint account, notwithstanding that either or both of them may have other or separate accounts with the Bank. In the event of the death of a depositor, the survivor(s) must notify us immediately. Any action we take before receiving signed, written notice of death is binding on you, your successor(s), assign(s), heir(s), executor(s), administrator(s), and distributee(s).

Any obligation of the Depositor to the Bank under this agreement may be enforced by the Bank against any joint depositor individually.

## PRECIOUS METALS DISCLOSURE STATEMENT

This Disclosure Statement explains the potential risks and rewards of buying and selling precious metals. It also explains how we conduct precious metals transactions.

**Potential Risks of Investing in Precious Metals**
Precious metals are commodities and, with the exception of certain coins, are not legal tender. Like all commodities, the price of precious metals can fluctuate sharply and rapidly. The market price may fall below the price you paid.

Precious metals do not pay interest or dividends. You are essentially speculating that the rise in the metal's price, less purchase and storage expenses, will be greater than the return on investments that do provide a yield.

**Factors That Affect Price**
Many factors affect the price of precious metals. For example, price variations may be caused by current economic and political events or by shifts in demand. Prices may also increase above the spot price due to retail markups, safekeeping charges, shipping costs and local sales tax.

**Who Should Invest in Precious Metals**
The precious metals market is not appropriate for the entire investing public. Enter this market only if you have sufficient capital. Even then, you should limit purchases to a small percentage of your total resources. Always keep your overall financial situation and investment objectives in mind.

**Precious Metals Transactions**
*How We Sell Precious Metals*
The precious metals we sell are stamped with their weight and fineness. Purchases will be settled on the second business day after the trade date. No transactions will be made on margin.

If the precious metals are to be shipped, we will charge you for handling, delivery, and insurance. You must make the shipping arrangements with your account officer.

*How We Buy Precious Metals*
We are not obligated to repurchase any precious metals we sell. Also, we will, in principle, only purchase precious metals we originally sold. We may bid on your precious metals after we receive your written offer for sale. Any bids we make will be based on the prevailing market price.

If the metals have not been held in safe custody by us, we will examine them before repurchase. If their authenticity is in doubt, the metals will have to be assayed at your expense, including any shipping costs.

## CLIENT PRIVACY NOTICE

The U.S. offices of UBS AG are committed to safeguarding the personal information that you provide us. This notice describes our privacy policy and how we handle and protect personal information that we collect about individuals, such as you, who apply for or obtain our products and services. The provisions of this notice will apply to former customers as well as current customers.

**Why and How We Collect Personal Information**
We collect personal information about you for business purposes, such as evaluating your financial needs, processing your requests and transactions, informing you about products and services that may be of interest to you, and providing customer services. The personal information we collect about you comprises:

- information you provide to us orally and on applications and other forms (such as your name, address, identification or passport number, occupation, assets, and income);

- information about your transactions with us, our affiliates and others; and

- information we receive from consumer reporting agencies and similar sources (such as your credit history and creditworthiness).

## How We Protect Personal Information

We limit access to your personal information to those employees who need to know in order to conduct our business, service your account, and help you accomplish your financial objectives, such as providing you with a broad range of products and services. Our employees are required to maintain and protect the confidentiality of your personal information and must follow established procedures to do so. To comply with applicable laws and regulations, we maintain physical, electronic, and procedural safeguards to protect your personal information.

## Sharing Information With Our Affiliates

We may share personal information described above with our affiliates for business purposes, such as servicing customer accounts and informing customers about new products and services, and as permitted by applicable law. Our affiliates are companies controlled or owned by us and include financial service companies (such as securities brokers) and may include companies not involved in financial services. The information we share with affiliates for marketing purposes may include the information described above (such as name, address and UBS account information) but will not include other credit information (such as credit history appearing on a consumer credit report or net worth and income information appearing on applications for our products and services).

## Disclosure to Non-Affiliated Third Parties

We may share the personal information described above for business purposes with companies and individuals, not affiliated with us, that are under contract to perform services for us or on our behalf (such as vendors providing data processing, computer software maintenance and development, transaction processing and marketing services).

We will share personal information with non-affiliated companies and individuals only when they agree to uphold and maintain our privacy standards when handling a customer's personal information.

Also, we may disclose personal information with non-affiliated companies and individuals and regulatory authorities as permitted or required by applicable law. For example, we may disclose personal information to cooperate with regulatory authorities and law enforcement agencies, to comply with legal orders and as necessary to protect our rights or property. Except as described in this privacy policy, we will not use your personal information for any other purpose unless we describe how such information will be used at the time you disclose it to us or we obtain your permission to do so.

## Accessing and Revising Your Personal Information

We endeavor to keep our customer files complete and accurate. We will give you reasonable access to the information we have about you. Most of this information is contained in account statements that you receive from us and applications that you submit to obtain our products and services. We encourage you to review this information and notify us if you believe any information should be corrected or updated. If you have a question or concern about your personal information or this privacy notice, please contact your UBS Client Advisor.

## ONLINE ACCESS TERMS AND CONDITIONS

THESE ONLINE ACCESS TERMS AND CONDITIONS APPLY ONLY IF YOU HAVE ELECTED TO HAVE ONLINE ACCESS TO YOUR ACCOUNT INFORMATION.

**1.   Initial Acceptance of Terms.**  By accessing the UBS Wealth Management Online Access Site (the "Site"), you agree to the following terms and conditions. If you do not agree to all of these Online Access Terms and Conditions ("Online Access Terms"), you should not access any information on the Site.

**Notice to Authorized Users:**  You should not access any information on the Site if you do not agree to all of these Online Access Terms. As appropriate, references herein such as "you" and "your" should be read to include Authorized Users (defined in Section 8 below) in connection with their access of the Site.

**2.   Other Agreements.**  These Online Access Terms are in addition to (and do not replace or modify) any other agreements you may have with UBS AG ("UBS") or any affiliates, subsidiaries, divisions or units thereof.

**3.   Pricing.**  Your account value excludes unpriced securities and other items not in your net account value (e.g., direct/private investments). Certain security prices are not updated daily. Interest-bearing certificate of deposit positions are displayed at the market value rather than the value at maturity. If your account includes restricted securities, these are reflected in your account value at the market price of the unrestricted stock of the same issuer. This is an

imputed value only and may differ substantially from the current market value of the restricted shares as such securities may be ineligible for resale, illiquid and/or subject to restrictions on resale/surrender which may substantially reduce their current market value.

**4. No Offer, No Obligation.** No information provided on the Site constitutes a solicitation, offer, financial advice or recommendation to buy or sell any investment instruments, to effect any transactions, or to conclude any legal act of any kind whatsoever. The information available to you on the Site is provided for informational purposes and solely as a personal reference tool, and is subject to change without notice. UBS makes no representation (either express or implied) that the information provided is accurate, complete or up to date. In particular, UBS shall not be obliged to remove any outdated information from the Site or to expressly mark any such information as being outdated. No warranty is made with respect to any security prices provided. No investment or any other decisions should be made based solely on the contents of the Site. You should obtain advice from a qualified expert before making any investment decision.

**5. No Indication of Future Performance.** The future performance of an investment cannot be deduced from previous market value, as the value of an investment may fall as well as rise. An investment may also lose value due to changes in rates of foreign exchange. UBS cannot guarantee that any capital invested will maintain or increase in value.

**6. Changes to these Online Access Terms.** You agree that UBS may change these Online Access Terms at any time. Such changes will be posted online and will be effective upon posting. Your continued use of the Site thereafter will constitute your acceptance of the changes and your agreement to be bound by the Online Access Terms, as amended. If you do not agree to the changes, you must notify UBS in writing or by telephone of your refusal and discontinue your use of the Site.

**7. Changes to the Site.** UBS will not be required to notify you of any change in the Site's features or content. In addition, UBS may at any time, with or without notice, restrict the use and accessibility of the Site. UBS may also temporarily suspend or revoke your rights to use the Site based on UBS's belief or suspicion that your use of the services exceeds or violates these Online Access Terms.

**8. Your Responsibilities.** You are responsible for all statements made and acts or omissions that occur while your user identification name (your "User Name") and password are being used. You are responsible for protecting and securing your User Name and password from unauthorized use and disclosure. You are also responsible for notifying each party not a signatory on your account whom you have requested be granted online access to your account information (each, an "Authorized User") of these Online Access Terms, and that by accessing the Site they fully agree to these Online Access Terms. If you become aware of, or believe there has been, any breach of security for any of your information stored on the Site, such as the theft or unauthorized use of your User Name, password or any other information, you agree to notify UBS immediately.

**9. Indemnification by You.** You will indemnify and hold harmless UBS, its affiliates and their respective employees, officers, directors and agents, and each party (whether or not identified on the Site) who provides information available on the Site (each, a "Provider"), from any and all claims, losses, expenses and damages, including reasonable attorneys' fees, imposed on, incurred or asserted as a result of or relating to: (a) any violation of these Online Access Terms by you or any of the Authorized Users identified by you to UBS; (b) your unauthorized receipt or use of information or services provided through the Site; (c) any unauthorized use of information or services provided through the Site directly or indirectly related to failure to reasonably protect and secure your User Name and password from unauthorized use and/or disclosure; and/or (d) any third-party actions related to your receipt and use of information or services available through the Site, whether authorized or unauthorized under this Agreement.

**10. Copyright and Limitations on Your Use of Information.** The information available on the Site, including, but not limited to text, images, illustrations, audio clips and video clips (if any) is protected by copyrights, trademarks, service marks and/or other property rights under the laws of various states, the United States and foreign jurisdictions, and is owned and controlled by UBS, its affiliates, agents and/or their respective Providers. You may use and print a copy of the information contained in the Site for your personal, non-commercial use only. You may not copy, reproduce, retransmit, distribute, disseminate, sell, publish, broadcast or circulate (including by e-mail or other electronic means) the information available on the Site for any commercial purpose

or use without the prior express written consent of UBS, its affiliates and/or their respective agents or Providers (as applicable). Transmission or use of any information in violation of this Agreement, or any applicable law, rule or regulation (whether of any state, the United States or other countries), or of the rights of any third party is prohibited. This includes, but is not limited to, copyrighted information, information which is defamatory, threatening, obscene, lewd and indecent, information protected by trademark, trade secret or patent laws, or information that results in an invasion of privacy. You may not use on another web site any trademarks, service marks or copyrighted materials appearing on the Site, including but not limited to any logos or characters, without the express written consent of the owner of the mark or copyright. You may not frame or otherwise incorporate into another web site any of the information on the Site without the prior written consent of UBS. You agree to access the information on the Site manually after logging onto the Site and not programmatically by macro or other automated means.

**11. Your Acknowledgement.** You acknowledge that the Site is for informational purposes only and does not constitute an offer to sell or a solicitation of an offer to buy any security which may be referenced in the Site. Such offers can only be made where lawful under applicable law. The Site may include facts, opinions and recommendations of individuals and organizations deemed of interest. Neither UBS, its affiliates nor their Providers guarantee the accuracy, completeness or timeliness of, or otherwise endorse, these views, opinions or recommendations. If you wish to learn more about information available through the Site, please contact your Client Advisor. You agree that the information available through the Site is not the official record of your UBS account and is subject to changes, errors and omissions. Your printed transaction confirmations and periodic UBS statements are the official records of your UBS account. Also, information available through the Site is not a substitute for other important information sent to you by UBS and cannot be used for tax, planning, tax reporting or other official purposes. UBS does not provide tax or legal advice. Please consult your own tax or legal advisor regarding your specific situation.

**12. Links to and From Other Sites.** In the event you use the Site or the links included on the Site to gain access to another Internet site or information on any company, organization or person other than UBS, you acknowledge that such other sites are not under the control of UBS. You agree that UBS shall not be responsible for any information or other links found at any such sites, or for your use of such information. UBS provides such links only as a convenience to you, and has not tested any software or verified any information found at such sites. The fact that UBS has provided a link to another site does not signify UBS's endorsement of the site, its contents or any participants in the site. There are inherent risks in the use of any software or information found on the Internet, and you acknowledge that you understand these risks before making any use of the Site. You understand that third parties not affiliated with UBS may link to the Site. You agree that this link does not imply UBS's endorsement or sponsorship of such third parties or the contents of the third party sites.

**13. Limitation of Liability.** UBS disclaims, without limitation, all liability for any loss or damage of any kind, including any direct, indirect or consequential damages, which might be incurred through the use of or access to the Site, or any links to third-party web sites. Furthermore, UBS disclaims all liability for any unauthorized party's tampering with the user's computer system. In this regard, UBS expressly reminds you of the risk of viruses, and the possibility of attacks by hackers. In order to combat viruses, it is recommended that the most recent browser versions be used, and that anti-virus software be installed and continually updated. As a rule, the opening of any e-mail from an unknown source as well as any unexpected attachment to an e-mail message should be avoided.

**14. Termination.** Your use of the Site will continue until terminated by UBS or until you notify UBS by telephone, regular mail or courier of your decision to terminate the services. UBS may, in its sole and absolute discretion, and without notice to you, discontinue or change the services provided through the Site or suspend your access to all or any part of the services for any reason. Termination of your permission to use the Site will, simultaneously upon taking effect, be deemed constructive termination of permission for any Authorized User to use the Site. In the event of a termination by UBS, UBS, its affiliates and their respective directors, officers, employees, agents and Providers shall have no liability to you.

**15. Fees and Payments to Third Parties.** You are responsible for any charges incurred to access the Site through an Internet access provider or other third party service. You agree to pay all charges billed to you by third parties in connection with your access to the Site. UBS SHALL NOT BE LIABLE FOR ANY AMOUNTS BILLED TO YOU BY A THIRD

PARTY, WHETHER OR NOT THESE AMOUNTS WERE AUTHORIZED BY YOU.

**16. Material Interests.** The UBS Group and/or its boards of directors, executive management and employees may have or have had interests or positions, or traded or acted as market maker, in relevant securities. Furthermore, such entities or persons may have or have had a relationship with or may provide or have provided corporate finance or other services to or serve or have served as directors of relevant companies.

**17. Local Legal Restrictions.** The Site is not directed to any person in any jurisdiction where (by reason of that person's nationality, residence or otherwise) the publication or availability of the Site is prohibited. Persons to whom such prohibitions apply must not access the Site.

**18. United Kingdom Users.** To the extent that material on the Site is issued in the United Kingdom, it is distributed by UBS Limited, a subsidiary of UBS. Persons dealing with UBS or other members of the UBS Group outside the United Kingdom are not covered by the rules and regulations made for the protection of investors in the United Kingdom.

**19. Your Representations and Warranties.** You hereby represent and warrant that you are 18 years of age or older. Unless you advise UBS to the contrary in writing, and provide UBS with a letter of approval from your employer, where required, you represent that you are not an employee of any U.S. securities exchange, or of any corporation of which any exchange owns a majority of the capital stock, or a member of any exchange, or of a member firm or member corporation registered on any exchange, or of any corporation, firm or individual engaged in the business of dealing, either as a broker or as a principal, in securities, bills of exchange, acceptances or other forms of commercial paper.

**20. Disclaimer of Warranty.** There may be delays, omissions or inaccuracies in information accessed through the Site. You understand and agree that your use of the service is at your sole risk. NEITHER UBS, ITS AFFILIATES, NOR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR PROVIDERS REPRESENT OR WARRANT THAT ACCESS TO THE SITE WILL BE UNINTERRUPTED OR THAT INFORMATION CONTAINED ON THE SITE WILL BE ERROR-FREE, NOR DOES ANY OF THEM MAKE ANY REPRESENTATION OR WARRANTY AS TO THE RESULT THAT MAY BE OBTAINED FROM THE USE OF SUCH INFORMATION OR AS TO THE TIMELINESS, SEQUENCE, ACCURACY, COMPLETENESS, RELIABILITY OR

CONTENT OF ANY INFORMATION PROVIDED THROUGH THE SITE. THE SERVICE IS PROVIDED ON AN "AS IS," "AS AVAILABLE" BASIS WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THOSE OF INFORMATION ACCESS, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**21. Limitation of Liability.** NEITHER UBS, ITS AFFILIATES, NOR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR PROVIDERS SHALL BE LIABLE TO YOU OR ANYONE ELSE FOR:

(a) ANY LOSS OR INJURY CAUSED IN WHOLE OR PART FOR ANY REASON, INCLUDING BY ITS (OR THEIR) NEGLIGENCE OR CONTINGENCIES BEYOND ITS (OR THEIR) CONTROL, IN PROVIDING, PROCURING, COMPILING, INTERPRETING, REPORTING OR DELIVERING INFORMATION THROUGH THE SITE;

(b) ANY DECISION MADE OR ACTION TAKEN BY YOU IN RELIANCE ON ANY ASPECT OF THE SITE, INCLUDING, WITHOUT LIMITATION, INFORMATION AVAILABLE THROUGH THE SITE; AND/OR

(c) ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, DIRECT, INDIRECT OR SIMILAR DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR TRADING LOSSES), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Exhibit 6

## RECEIPT, RELEASE AND REFUNDING AGREEMENT

WHEREAS, UBS AG ("UBS"), through its New York Branch, is the depository of accounts YR-325504 and YR-201995 (the "Accounts") as to which Emilio Martinez Manautou, deceased, and Letizia Martinez de Gonzalez ("Ms. Gonzalez") are named in the account documentation as joint depositors; and

WHEREAS, UBS, through its New York Branch, also is the depository of accounts YR-202440, YR-322826, YR-329435 and YR-329445 established by Emilio Martinez Manautou, deceased (collectively, these are the "Other Accounts"); and

WHEREAS, Emilio Martinez Manautou died on December 24, 2004; and

WHEREAS, the Accounts are governed by New York law and each of the Accounts is titled as a joint tenancy with right of survivorship so as to vest Ms. Gonzalez, as the survivor, with sole ownership of each of the Accounts upon Emilio Martinez Manautou's death; and

WHEREAS, Ms. Gonzalez has requested that an immediate distribution be made to her of the full balance of each of the Accounts based upon her status as surviving joint tenant with right of survivorship; and

WHEREAS, Section 2203 of the Internal Revenue Code provides that the term "executor" shall mean, "if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent . . ."; and

WHEREAS, the Estate of Emilio Martinez Manautou does not presently have an executor or administrator appointed, qualified, and acting within the United States; and

WHEREAS, Section 3713(b) to Title 31 of the United States Code provides that "[a] representative of a person or an estate . . . paying any part of a debt of the person or estate before paying a claim of the [United States] Government is liable to the extent of the payment for unpaid claims of the [United States] Government . . ."; and

WHEREAS, there is concern that Section 3713(b) to Title 31 of the United States Code could potentially apply to a distribution of any portion of the Accounts to Ms. Gonzalez; and

WHEREAS, there is further concern that one or more other persons may claim an interest in the Accounts.

NOW, THEREFORE,

1.    Ms. Gonzalez acknowledges receipt from UBS of the full balance of the Accounts as of April 6, 2005, as shown in Schedule I attached hereto and made a part hereof, representing her maximum and entire interest in the Accounts, with the exception of such securities not yet liquidated as are identified in Schedule II attached hereto and made a part hereof.  Ms. Gonzalez shall provide UBS, through its New York Branch, with all directions necessary to facilitate the transfer of the Accounts.

2.    Ms. Gonzalez makes the following representations intending that UBS shall rely upon them:

(a)  that she is above the age of 18 years;

(b)  that she has never transferred to any person or entity, or otherwise encumbered, in whole or in part, her interest in the Accounts;

(c)  that, to her best knowledge and belief, for purposes of this Agreement, as to the Accounts or Other Accounts there are (i) Ms. Gonzalez; (ii) Luis Gerardo Martinez Cardenas; (iii) Roberto Delgado Gonzalez; (iv) Georgina Martinez de Blasquez; (v) Sergio

Martinez (who may be an heir at law with respect to intestate property, but who is not otherwise named as a beneficiary); (vi) Josefa Sicard-Mirabel; and (vii) Alicia Trevino Montemayor, who may also be known as Alicia Trevino Hobbs (who collectively, are the "Potential Beneficiaries");

   (d) that she has not been notified of any claims as to the Accounts or Other Accounts by any person or entity other than a Potential Beneficiary; and

   (e) that she has provided notice of the transfers provided for in this Agreement to the Potential Beneficiaries or their respective counsel, or contemporaneously with such transfers, is providing such notice.

  **3.** Ms. Gonzalez hereby agrees:

   (a) that, in the event that a claim of right is asserted to or against UBS (which includes any of its predecessors, successors, agents, parents, subsidiaries, affiliates, officers, directors, representatives, employees, partners, and assigns) in respect of the Accounts, or any part of either of them, in any judicial proceeding brought by any of the Potential Beneficiaries (other than Ms. Gonzalez), or any person acting by or through them, she (i) will, at her cost and expense, assume the defense of such claim, and (ii) will comply in a timely manner with any judicial order issued in such proceedings, whether final or interlocutory, to refund the full amount specified in such judicial order, without prejudice to such rights as Ms. Gonzalez may have to suspend the operation of such judicial order by stay, appeal, or other due process of law. UBS agrees (i) to provide Ms. Gonzalez with timely notice of such claim or proceeding, as provided in paragraph 8, below, (ii) to cooperate with Ms. Gonzalez in her defense of such claim or proceeding, (iii) to, at Ms. Gonzalez's cost and expense, assume the defense of such claim or proceeding only to the extent that Ms. Gonzalez does not timely respond thereto, and (iv) in the

event of Ms. Gonzalez's refunding all or a portion of the proceeds of the Accounts to UBS, that

such funds shall be kept in an interest bearing account pending the final resolution thereof or

other judicial order; and

(b) that, in the event that the United States Government, some other govermental

unit (including without limitation a state of the United States or a foreign government) or any

other third party asserts that UBS is or may be liable thereto for having made payments to Ms.

Gonzalez in respect of her interests in the Accounts, she will (i) assume, at her cost and expense,

the defense of such claim, and, upon a final determination by such claimant, (ii) promptly refund

to UBS, at the time and place designated by UBS, upon demand therefor, the amount of any

income or estate taxes, or other death taxes (as the case may be), assessed against the Estate of

Emilio Martinez Manautou, deceased, together with interest and penalties thereon applicable to

such refunding, that is attributable to any such payments, with the amount to be determined in

the sole and absolute discretion of UBS, provided, that such obligation shall be without prejudice

to such rights as Ms. Gonzalez may have under applicable law to suspend the effect of such

assessment by appeal or other appropriate procedure; and

(c) that she will share with UBS, through its New York Branch, all information

relating to any assertion of rights or claims with respect to the Accounts or the Other Accounts;

and

(d) that, to the extent of any amounts, including reasonable amounts relating to

attorneys, or other, fees and expenses associated with claims relating to the Accounts by reason

of the claims described in the foregoing provisions of this paragraph 3, she will be liable for all

such reasonable legal fees and expenses of UBS, and other costs and expenses of UBS relating to

this Agreement or the enforcement thereof; and

(e) that, from the amount shown in paragraph 1, there shall be deducted $80,000 in respect of the Accounts' service fees, including reasonable fees and expenses for legal services, related to the disposition of assets in Accounts YR-325504 and YR-201995, payable to UBS pursuant to the contractual obligations applicable to such Accounts, through April 8, 2005. The payment of the fees described in subparagraph (e) from the Accounts is for the convenience of the parties hereto and shall not be deemed by any person to represent a determination by Ms. Gonzalez of the proper allocation of such fees and expenses and additional accruing fees and expenses to and among the Accounts, the Other Accounts or other assets of Emilio Martinez Manautou held elsewhere.

4.    In consideration for releasing the Accounts, Ms. Gonzalez hereby grants to UBS, for its benefit and for the benefit of any of its predecessors, successors, agents, parents, subsidiaries, affiliates, officers, directors, representatives, employees, partners, and assigns (each a "Secured Party") a continuing lien on and security interest in any and all property in the Other Accounts and any funds credited thereto, and the proceeds of such property and funds, allocable, or that may become allocable, to her as beneficiary or heir at law of Emilio Martinez Manautou, to the extent any obligation owed by her or her assigns pursuant to this Agreement or otherwise is unpaid.

5.    As additional consideration for releasing the Accounts, Ms. Gonzalez hereby agrees and acknowledges that UBS shall have the absolute and unconditional right to satisfy all or any portion of any obligation to pay any amounts that are due under this Agreement, including any reasonable attorneys, or other, fees and expenses associated with UBS's rights under this Agreement (or the enforcement thereof) by setoff against such amounts in the Other Accounts as are allocable, or that may become allocable, to her as a Potential Beneficiary.  UBS shall effect

any such setoff by giving written notice of such setoff contemporaneously with such setoff at the address provided in paragraph 8, below, provided however, that the failure to give such notice shall not affect the validity of the setoff. This setoff provision shall be without prejudice and in addition to any right of setoff, combination of accounts, lien or other right to which UBS is at any time otherwise entitled (either by operation of law, contract or otherwise).

6.     In connection with this Agreement and for good and valuable consideration the receipt of which is hereby expressly acknowledged, except for rights specifically granted to or retained by Ms. Gonzalez under this Agreement, itself, Ms. Gonzalez does hereby release, acquit, and forever discharge UBS of and from any and all manner of claims, actions, causes of action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, penalties, trespasses, court costs, judgments, extents, executions, claims for attorneys' fees, claims for exemplary or punitive damages, claims for consequential damages, and all claims and demands of whatever type in law or in equity, which against UBS Ms. Gonzalez ever had, now has, or hereafter may have for, upon, by reason of, in connection with, or relating in any way to the Accounts, whether known or unknown, from the beginning of the world to the day of the date of this Agreement. As a further clarification of this paragraph 6, it is expressly understood that nothing in this Agreement shall constitute a release, acquittal or discharge of any claims Ms. Gonzalez may have, in any capacity, against any person or entity by reason of, in connection with, or relating in any way to the Other Accounts.

7.     Ms. Gonzalez hereby irrevocably agrees (a) to submit to the non-exclusive jurisdiction of any state or federal court sitting in New York City in any action, suit or

proceeding arising out of or relating to the Accounts; and (b) that, at UBS's option, all claims in respect of such action, suit or proceeding may be heard and determined in such courts.

8.      Without affecting UBS's right to serve legal process in any manner permitted by law, Ms. Gonzalez irrevocably consents to the service of any and all process in any such action, suit or proceeding by the mailing of copies of any such process to the attention of Ms. Gonzalez at 219 Lakeridge Road, San Antonio, Texas 78229.  Ms. Gonzalez may change this address in the future by faxed and mailed notice to UBS, through its New York Branch, with a copy of such notice to White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, Attention: Maureen Donovan and Owen Pell.  Ms. Gonzalez and UBS agree that a final judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions (including without limitation in countries other than the United States) by suit on the judgment or in any other manner provided by law.

9.      This Agreement may not be amended, altered, or changed absent a writing signed by Ms. Gonzalez and UBS.

10.      This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of New York without regard to conflict of laws principles that would have the effect of applying laws of a different jurisdiction.

11.      The rights granted UBS under this Agreement in respect of the Accounts or the Other Accounts are in addition to, and not by way of limitation of, whatever rights UBS has under the agreements relating to the Accounts or the Other Accounts or under other contracts or applicable law relating thereto.

12.      This instrument shall be binding upon the heirs, distributees, executors, administrators, successors and assigns of Ms. Gonzalez.

IN WITNESS WHEREOF, the undersigned have signed below.

Date _____, 2005        _____(L.S.)
                                          Letizia Martinez de Gonzalez

Witnesses:

_____

_____

Date _____, 2005        _____
                                          UBS

Date _____, 2005        _____
                                          UBS

State of _____ )
                              ss.:
County of _____ )

        On the _____ day of _____ in the year 2005 before me, the undersigned, personally appeared Letizia Martinez de Gonzalez, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.   Such individual made such appearance before the undersigned in _____ (insert city or other political subdivision and state or country or other place acknowledgment was taken).


_____
Notary Public
Commission Expires:
(Affix Stamp or Seal)

SCHEDULE 1

Receipt, Release and Refunding Agreement ("Agreement")

Pursuant to Paragraph 1 of the Agreement, the full balance of the Accounts as of April 6, 2005, is $4,833,853.00.

SCHEDULE 2

Receipt, Release and Refunding Agreement ("Agreement")

Pursuant to Paragraph 1 of the Agreement, the securities not yet liquidated are those whose approximate description is as follows:

| Quantity | Asset Description | Est. Market Value |
|----------|-------------------|-------------------|
| 250,000 | JPMORGAN CHASE BANK SER BKNT DTD 11/30/04 QUARTERLY CUSIP:48121CAF3 | U.S. $1,554.00 |

Exhibit 7