UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LETIZIA MARTINEZ DE GONZALEZ, as
administratrix and executrix of the Estate of
Emilio Martinez Manautou, as Trustee of the          :
Emilio Martinez Manautou Trust, and as               :
Trustee of the EMM Trust,

                                    :

        Plaintiff-Counterclaim Defendant,

                                    :

        - against -          :          07 Civ. 7462 (RJS)

                                    :

UBS AG and UBS TRUSTEES LTD.,

                                    :

        Defendants-Counterclaim Plaintiff,

                                    :

        and

                                    :

UBS AG,

                                    :

        Third-Party Plaintiff,

                                    :

        - against -          :

ROBERT J. REGER, JR. and
THELEN, REID, BROWN, RAYSMAN &          :
STEINER, LLP,

                                    :

        Third-Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW OF DEFENDANT, COUNTERCLAIM PLAINTIFF AND THIRD-PARTY PLAINTIFF UBS AG IN OPPOSITION TO PLAINTIFF'S MOTION TO RELINQUISH BANK DEPOSITS

Dated: New York, New York
       February 7, 2008

Arthur M. Handler
Robert S. Goodman
HANDLER & GOODMAN LLP
805 Third Avenue, 8th Floor
New York, New York 10022
(646) 282-1900

Attorneys for Defendant, Counterclaim
Plaintiff and Third-Party Plaintiff UBS AG

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT........................................................................................................................ 6

POINT I     PLAINTIFF HAS NOT MET THE STANDARDS FOR
            SUMMARY JUDGMENT ................................................................ ....6

POINT II    THE TERMS OF THE PARTIES' CONTRACT REQUIRE DENIAL
            OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.................. ....8

            A.    Plaintiff Offers No Authority To Override The Parties'
                  Written Agreement.................................................................................8

            B.    At The Very Least, There Is A Dispute About Contractual
                  Language Which Requires That Plaintiff's Motion For
                  Summary Judgment Be Denied ................................................................13

            C.    The Ultimate Relief Sought By Plaintiff Is Dependent
                  On Final Resolution Of The Underlying Causes Of
                  Action In The Complaint ........................................................................15

POINT III   PLAINTIFF HAS NOT MET THE HEIGHTENED LEGAL
            STANDARD FOR A MANDATORY INJUNCTION ....................................16

            A.    Plaintiff Does Not Meet The Lesser Standard For A
                  Prohibitory Preliminary Injunction.........................................................16

            B.    Plaintiff Cannot Meet The Higher Standard For A
                  Mandatory Injunction ...........................................................................17

CONCLUSION....................................................................................................................21

i

## TABLE OF AUTHORITIES

CASES                                                                      PAGE

Breed, Abbott, & Morgan v. Hulko,
139 A.D.2d 71, 531 N.Y.S.2d 240 (1st Dep't 1988),
affirmed, 74 N.Y.2d 686, 543 N.Y.S.2d 373 (1989) .................................................................11

Chemical Bank v. Ettinger,
196 A.D.2d 711, 602 N.Y.S.2d 332 (1st Dep't 1993) .................................................................10

De Gonzalez v. The Custodian of Records of UBS AG,
15 Misc.3d 1108(A), 836 N.Y.S.2d 497 (Sup. Ct. N.Y. Cty. 2007) .............................................19

Deleon v. Putnam Valley Bd. of Ed.,
2006 WL 236744 (S.D.N.Y. 2006) ............................................................................................ ....7

First African Trust Bank Ltd. v. Bankers Trust Co.,
1992 WL 276833 (S.D.N.Y. 1992) .......................................................................16, 17, 18, 19, 20

First African Trust Bank v. Bankers Trust Co.,
1995 WL 422269 (S.D.N.Y. 1995)...........................................................................................20

Gillman v. Chase Manhattan Bank,
73 N.Y.2d 1 537 N.Y.S.2d 787 (1988) ............................................................................9, 10, 15

Holtz v. Rockefeller,
258 F.3d 62 (2d Cir. 2001) .....................................................................................................7

Katz v. Berisford Int'l, PLC, 1998 WL 684481 (S.D.N.Y. 1998)................................................14

Lazard Freres & Co. v. Protective Life Ins. Co.,
108 F.3d 1531 (2d Cir. 1997) .................................................................................................14

Line Communications Corp. v. Reppert,
265 F.Supp.2d 353 (S.D.N.Y. 2003) ....................................................................................17, 18

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,
418 F.3d 168 (2d Cir. 2005) ...................................................................................................12

MSF Holding Ltd. v. Fiduciary Trust Co., Int'l,
435 F.Supp.2d 285 (S.D.N.Y. 2006) .........................................................................................7

Murray v. Visiting Nurse Services of New York,
2007 WL 3254908 (S.D.N.Y. 2007) ....................................................................................6, 14

National Union Fire Ins. Co. of Pittsburgh, PA v. Cooper,
1990 WL 55690 (S.D.N.Y. 1990)................................................................................................14

Nigro v. Dwyer,
438 F.Supp.2d 229 (S.D.N.Y. 2006) ............................................................................................7

Risenhoover v. Bayer Corp. Group Health Plan,
83 F.Supp.2d 408 (S.D.N.Y. 2000) ...........................................................................................17

Sparaco v. Lawler, Matusky, Skelly Engineers, LLP,
60 F.Supp.2d 247 (S.D.N.Y. 1999) ...........................................................................................19

Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,
60 F.3d 27 (2d Cir. 1995) .....................................................................................................16, 18

## FEDERAL STATUTES AND RULES

FRCP 56..........................................................................................................................................6

FRCP 56(e) ....................................................................................................................................7

Federal Rule of Evidence 408........................................................................................................7

## STATE STATUTES AND RULES

Local Rule 56.1 ..........................................................................................................................2, 7

Local Rule 56.1(a) .........................................................................................................................7

McKinney's Uniform Commercial Code § 9-312(b)(1)................................................................19

## PRELIMINARY STATEMENT

This memorandum of law is submitted by defendant, counterclaim plaintiff and third party plaintiff UBS AG in opposition to plaintiff's motion to compel UBS AG to relinquish bank deposits which are the subject of the complaint. The motion should be denied because it is in fact a motion for summary judgment on two of plaintiff's alleged causes of action but as to which plaintiff has failed to meet both the procedural requirements and the substantive legal standards for such a motion and indeed has completely failed to address them. As to the second of the two causes of action on which plaintiff seeks a summary mandatory injunction, plaintiff also fails to address or satisfy the legal standards for such an injunction. The parties' written contract, on which plaintiff bases her motion, on its face actually supports the entitlement of UBS AG to retain all the funds remaining on deposit. Indeed, plaintiff fails to mention or discuss two of the most important clauses of the contract, including the clause which grants UBS AG a general lien on the deposits and hence an enforceable security interest with respect to plaintiff's obligations to UBS AG, which are set forth in UBS AG's counterclaim (see Handler Opposition Declaration ("Handler Opp. Decl."), Exh. A).

Although plaintiff chooses to title her motion "Motion Compelling UBS to Relinquish Bank Deposits," the motion is clearly one for summary judgment on the thirteenth and fourteenth causes of action alleged in the complaint (see Affidavit of Mitchel H. Ochs, Esq. ("Ochs Aff."), Exh. 7 (the "Complaint"), ¶¶ 121-129 at pg. 34-36), both of which have been put in issue by UBS AG's answer (Handler Opp. Decl., Exh. A). In failing to serve a notice of motion specifying the relevant section of the Federal Rules of Civil Procedure or other statute authorizing this motion, plaintiff impermissibly attempts to avoid the need to comply with the

procedural and substantive legal requirements required for the summary relief sought, and to deprive UBS AG of its right to a trial on the merits.

Plaintiff's papers do not include a statement of undisputed facts, as required by Local Rule 56.1 of this Court to obtain summary relief without a trial.  Aside from a memorandum of law, all that is presented in plaintiff's moving papers is an affidavit of counsel, which does not purport to be on personal knowledge, identifying a handful of annexed documents.  As a result, plaintiff has not and cannot demonstrate there is no genuine issue as to any material fact with respect to the relief being sought.

Plaintiff cannot meet the standards for summary judgment because, among other things, the controlling document – the General Terms and Conditions of Accounts which Dr. Martinez acknowledged to have received, read, and agreed to - expressly grants UBS AG a "general lien" on all funds on deposit and permits UBS AG to retain the funds on deposit for the discharge of the depositor's obligations to UBS AG, which includes obligations for contribution and indemnification pleaded in UBS AG's counterclaim (see Handler Opp. Decl., Exh. A) (see Point II, infra).  Plaintiff's motion fails to discuss or even mention the controlling contractual provisions and the controlling New York law on such provisions and sub silentio seeks to vacate and negate UBS AG's existing lien on the deposit.  To the extent that plaintiff's motion is predicated upon an interpretation of the parties' agreement or a perceived ambiguity, a disputed material fact exists which precludes summary relief in advance of the completion of discovery and trial.

Plaintiff's motion papers also fail to address the legal prerequisites for a mandatory injunction.  No showing is made that plaintiff satisfies the legal standard for a preliminary injunction, let alone the heightened legal standard applicable where, as here, plaintiff

- 2 -

is seeking to command a positive act by UBS AG, which amounts to substantially all of the relief sought in the complaint as to the funds remaining on deposit. UBS AG also would be substantially prejudiced should such relief be granted since once granted, such relief cannot effectively be undone because plaintiff is a non-resident of the United States, rendering it impossible or at least extremely difficult for UBS AG to regain possession of the funds after trial, thereby leaving UBS AG without any meaningful means of enforcement for a judgment on its counterclaim.

Accordingly, plaintiff's motion is legally insufficient as a matter of fact and law, and should be denied in all respects.

## STATEMENT OF FACTS

Plaintiff alleges that on December 24, 2004, Dr. Emilio Martinez Manatou ("Dr. Martinez") passed away, leaving behind numerous beneficiaries to his accounts with UBS AG, including the one account at issue on this motion, Account No. YR-202440 (the "440 Account") (Complaint, ¶ 28, 46, Pl. Mem. at 4). At least six different persons have a claim of entitlement to this account (Complaint, ¶¶ 28, 43) and "litigation among rival claimants ... is still unresolved" (Complaint, ¶ 3). At the time of Dr. Martinez's death, there was approximately $20 million in his accounts at UBS AG, in cash and securities (Pell Opposition Declaration ("Pell Opp. Decl."), Exhs. B and C). UBS AG has already released most of these funds to plaintiff (Pell Opp. Decl., Exhs. B and C; Pl. Mem. at 5, n. 1). Pursuant to the written contract between Dr. Martinez and UBS AG, UBS AG, according to plaintiff, currently holds approximately $5.0 million in the 440 Account (Ochs Aff., Exh. 2).

Dr. Gonzalez signed an Account Opening Statement with UBS AG for the 440 Account, including an acknowledgement that he read, received, and agreed to the General Terms

- 3 -

and Conditions of Accounts ("Terms and Conditions") (Costanza Opposition Declaration ("Costanza Opp. Decl."), Ex. A[1]; Ochs Aff., Exh. 1 at pg. 8). The Terms and Conditions along with the account application for the 440 Account represent the contract between Dr. Martinez, as depositor, and UBS AG, as bank (Ochs Aff., Exh. 1 at pg. 2 and 8; Costanza Opp. Decl., ¶¶ 3-4 and Exh. A). Plaintiff claims to be Dr. Martinez' successor, and to stand in the shoes of Dr. Martinez for the purposes of this account[2] (Pl. Mem. at 8).

> The relevant provisions of the Terms and Conditions are as follows:
>
> **General Lien, Right of Set-Off and Overdrafts** ("General Lien") (Terms and Conditions, Costanza Opp. Decl., Exh. A at pg. 2)
>
> Any and all monies and property whatsoever belonging to you or in which you have an interest held by UBS AG at any office, here or abroad, or carried for your account shall be subject to a general lien for the discharge of your obligations to the Bank, however arising and without regard to whether or not the Bank has made advances to you.
>
> In the event that there is an outstanding amount owed by you to the Bank, the Bank may, in its discretion, without prior notice to you, apply any monies or any other property on deposit with any office or affiliate of the Bank, whether individual or joint, in which you may have an interest, to satisfy such indebtedness.
>
> **Indemnity** (Terms and Conditions, Costanza Opp. Decl., Exh. A at pg. 4)
>
> You agree to indemnify us for all claims made against us, and all fees, expenses, taxes, legal liabilities, losses, demands, damages,

---

[1] The substantive provisions of the General Terms and Conditions of Accounts in Exhibit A to the Costanza Opp. Decl. were in effect on May 28, 2003 (Costanza Opp. Decl., ¶ 3), the date on which Dr. Emilio Martinez Manatou signed the account application for the 440 Account (Ochs Aff., Exh. 1 at pgs. 1 and 8), and are identical to the provisions in the General Terms and Conditions relied upon by plaintiff (Costanza Opp. Decl., ¶ 4 and Exh. A; Ochs Aff., Exh. 5).

[2] There is no question that the Terms and Conditions are binding on plaintiff as successor to Dr. Martinez. The terms and conditions specifically provide: "**Successors** - This agreement and your obligation thereunder shall be binding on you, and also on your successor(s), assign(s), heir(s), executor(s), administrator(s) and distributee(s)."

costs, charges, counsel fees or any other expense we sustain or incur arising out of this agreement or your accounts.

The Bank shall not be liable for errors in judgment or any action or omission to act in connection with this agreement, in the absence of the Bank's willful misconduct or gross negligence.

**Consulting Legal Counsel; Freezing of Account** (Terms and Conditions, Costanza Opp. Decl., Exh. A at pg. 3)

If the Bank deems it necessary, the Bank may, at the Depositor's expense, consult with legal counsel regarding the Depositor's account and/or retain legal counsel to appear in any legal proceeding affecting the Depositor's account in which the Bank is a party. The Bank is not obligated, however, to institute, defend or engage in any legal proceeding involving the Depositor's account unless the Bank is first indemnified to the Bank's satisfaction.

The account(s) will be debited for any and all fees, expenses, legal liabilities, losses, demands, damages, costs, charges, counsel fees or other expenses incurred by the Bank in connection with the foregoing.

Without limiting the foregoing, the Bank specifically has the right to consult with legal counsel in any jurisdiction which it deems necessary for the purpose of determining your successor(s), heir(s), executor(s), administrator(s) and distribute(s) prior to distributing the assets in your account(s) upon your death.

You agree that, upon the death of any accountholder, your account may be frozen until the Bank determines to its satisfaction (i) that all U.S. estate taxes due in connection with such accountholder's death have been paid, (ii) that no such taxes are payable and (iii) that the Bank has no liability for such taxes.

## ARGUMENT

## POINT I

## PLAINTIFF HAS NOT MET THE STANDARDS FOR SUMMARY JUDGMENT

Although titled "Motion Compelling UBS to Relinquish Bank Deposits," plaintiff's motion in substance seeks summary judgment on the thirteenth and fourteenth alleged causes of action in the complaint (Complaint, ¶¶ 121-129 at pg. 34-36). Plaintiff's motion papers fail to recognize that she is seeking summary judgment, as she does not include the customary Notice of Motion identifying the specific section of the Federal Rules of Civil Procedure or any other statute or rule authorizing this motion. However, the motion's demand to "relinquish bank deposits" is identical to the relief demanded in the thirteenth and fourteenth causes of action in plaintiff's complaint. In the thirteenth cause of action, plaintiff seeks a declaratory judgment that UBS AG has no right to retain funds transferred to UBS AG by Dr. Martinez and in the fourteenth cause of action, plaintiff seeks a "permanent mandatory injunction ordering UBS AG to turn over all funds transferred to UBS AG by Dr. Martinez" (Complaint, ¶¶ 121-129 at pg. 34-36).

To obtain summary relief in advance of discovery and trial, plaintiff is required to satisfy the summary judgment requirements of FRCP 56, standards this Court recently reiterated in Murray v. Visiting Nurse Services of New York, 2007 WL 3254908 at *5 (S.D.N.Y. 2007) (Sullivan, D.J.).

Plaintiff's motion papers do not meet the requirements of Rule 56. Plaintiff has not presented facts sufficient to warrant a grant of summary judgment under Rule 56, or denial of UBS AG's right to have facts determined only after a full discovery process and a trial. As shown in Point II, infra, the terms of the parties' contract support UBS AG's position that it is

- 6 -

entitled to retain the funds sought by plaintiff. Accordingly, the burden is on plaintiff to present undisputed record facts which support her interpretation of the parties' contract. She has not done so. The record on this motion is totally devoid of depositions, interrogatories and any affidavit from a person with personal knowledge of facts (FRCP 56(e)), disputed or otherwise. With the exception of a few documents annexed to the plaintiff's lawyer's affidavit, the limited facts presented in plaintiff's memorandum of law are usworn and not supported by any record citation. Worse, these unsupported unsworn facts include alleged recitations of confidential settlement discussions (see Pell Opp. Decl., ¶¶ 1-3), in violation of Federal Rule of Evidence 408. This Court should not issue summary relief on such a minimal record.

Plaintiff also fails to comply with the Local Rule 56.1, which requires a movant for summary judgment to submit a "statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). No such statement is included in the plaintiff's motion papers.

Local Rule 56.1 is more than a mere formality. Nigro v. Dwyer, 438 F.Supp.2d 229, 231 (S.D.N.Y. 2006). The Rule is designed to free this Court from the burdensome task of sifting through the movant's papers without guidance from the parties. Holtz v. Rockefeller, 258 F.3d 62, 74 (2d Cir. 2001), Nigro, supra at 231; Deleon v. Putnam Valley Bd. of Ed., 2006 WL 236744, * 2 (S.D.N.Y. 2006). Indeed, "failure to submit such a statement may constitute grounds for denial of the motion," Local Rule 56.1(a). MSF Holding Ltd. v. Fiduciary Trust Co., Int'l, 435 F.Supp.2d 285 (S.D.N.Y. 2006) (denying cross-motion on the ground that defendant failed to submit a 56.1 Counterstatement of Material Facts).

POINT II

## THE TERMS OF THE PARTIES' CONTRACT REQUIRE
## DENIAL OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

A.    Plaintiff Offers No Authority To Override The Parties' Written Agreement

On the limited record before the Court, summary judgment should be denied because the Terms and Conditions authorize UBS AG to retain the funds in question.

Significantly, plaintiff fails to cite to a single contractual clause which requires the release of the funds sought. Plaintiff fails to cite to any case authority supporting a grant of the summary relief sought on this motion in the face of Terms and Conditions like those at bar. Instead, plaintiff is reduced to citing general principles of contract interpretation and then engaging in tortuous argument to attempt to apply those principles to the Terms and Conditions. These arguments accomplish little more than confirming the inappropriateness of summary relief.

The Terms and Conditions, which Dr. Martinez acknowledged to have received, read, and agreed to, govern the relationship between Dr. Martinez and UBS AG [3] (Ochs Aff., Exh. 1 and Costanza Opp. Decl., Exh. A). The Terms and Conditions are binding by their terms on Dr. Martinez' successors, executors and administrators (Costanza Opp. Decl., Exh. A at p. 4) and are therefore binding on plaintiff as the adminstratrix and executrix of Dr. Martinez' estate. [4]

In tacit recognition that the express language of the Terms and Conditions authorizes UBS AG's continued retention of funds, plaintiff argues that the Court should accept plaintiff's disputed interpretation of several of the Terms and Conditions' relevant contractual

---

[3] The parties' agreement is governed by the laws of the State of New York (Ochs Aff., Exh. 1at p. 8).

[4] Remarkably, plaintiff argues that the agreement "at most, governs the relationship between Dr. Martinez, as depositor and UBS, as bank despositee" (Pl. Mem. at 3). Yet, with no additional documentary evidence, plaintiff alleges that "UBS owed special duties of care and loyalty to Dr. Martinez as fiduciary, investment advisor, and asset manager, separate and apart from their relationship as bank and depositor" (Pl. Mem. at 7).

- 8 -

provisions, an exercise which is wholly inappropriate on a motion for summary judgment. Among the provisions which plaintiff would have the Court limit or read out of the Terms and Conditions under the guise of "interpretation" are the following: Consulting Legal Counsel; Freezing Of Account. Significantly, plaintiff fails to disclose to the Court two other controlling provisions in the Terms and Conditions which authorize UBS AG to retain the funds remaining on deposit: General Lien and Indemnity.

The Terms and Conditions, including those ignored by plaintiff, unequivocally entitle UBS AG to retain a security interest in the account until all obligations owed to UBS AG have been determined, to hold the account to indemnify itself for legal fees in the event it prevails against plaintiff, and to freeze the account until all liabilities for estate taxes have been resolved. The controlling clauses of the parties' agreement are as follows:

(1) General Lien

Under the General Lien clause, any and all monies held by UBS AG shall be subject to a general lien in favor of UBS AG for the discharge of plaintiff's obligations to UBS AG "however arising and without regard to whether or not the Bank has made advances to . . . [plaintiff]" (Costanza Opp. Decl., Exh. A at 2). Pursuant to this term, UBS AG may take commercially reasonable steps necessary to secure it from potential loss from plaintiff's obligations to UBS AG. The clause, by law, creates and provides UBS AG with a security interest in the subject bank deposits. Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 14-15, 537 N.Y.S.2d 787, 794 (1988) (as at bar, the agreement in Gillman gave the bank "a general lien upon ... the balance of every deposit account"). The Court of Appeals of New York has held

- 9 -

that it is permissible for parties to agree to create a security interest in bank deposits and that such security interests are enforceable by the Bank.[5] Id.

Significantly, Gillman held that the security interest can be enforced even before there is an amount due from the depositor to the bank. 73 N.Y.2d at 16; 537 N.Y.S.2d at 794-95. The Gillman court held:

> Nor, contrary to the assignee's arguments, does it matter that, at the time of the segregation of the account, Aetna had not yet presented a draft to Chase for payment and that, therefore, nothing was then due from Jamaica Tobacco to Chase under paragraph 1 of the security agreement. Paragraph 7, when the security agreement was executed, contemporaneously vested Chase with a security interest in Jamaica Tobacco's checking account. The express purpose of granting the security interest was to secure Chase for the promised performance of the future as well as present obligations being assumed by Jamaica Tobacco.

Id. The Gillman court further found that Chase had acted properly in enforcing its security interest by transferring funds to an account to which the depositor had no access because the account at issue "would, in all likelihood, constitute the only available asset for its reimbursement." 73 N.Y.2d at 16, 537 N.Y.S.2d at 795. The same applies with even greater force at bar where plaintiff-counterclaim defendant is a non-resident of the United States and the subject funds may well be transferred outside the jurisdiction of this Court.

UBS AG accordingly retains a security interest in the 440 Account held for obligations owed by plaintiff that may be determined in this litigation or which may arise from claims by any of Dr. Martinez' other beneficiaries. UBS AG has asserted a counterclaim against plaintiff for contribution and indemnification, alleging, inter alia, efforts by plaintiff to transfer substantial sums of money away from a certain beneficiary of Dr. Martinez' trusts toward herself

---

[5] Under the common law, "a bank has a general lien on funds and securities in its possession to which it may look for a repayment of an account owed by the debtor-depositor to the bank." Chemical Bank v. Ettinger, 196 A.D.2d 711, 714, 602 N.Y.S.2d 332, 336 (1st Dep't 1993).

(Handler Opp. Decl., Exh. A at ¶ 30 of counterclaim).  Moreover, there are at least half a dozen beneficiaries to Dr. Martinez' trusts (Complaint, ¶¶ 28, 43), and plaintiff admits that there has been litigation amongst these various claimants "which is still unresolved" (Complaint, ¶ 3). Plaintiff's actions may have exposed UBS AG to potential liability for which plaintiff may be liable to UBS AG pursuant to the counterclaim for contribution and indemnification.  Plaintiff's 26(a)(1) disclosure reveals that she is seeking over $10 million in total monetary relief from UBS AG (Handler Opp. Decl., Exh. B).  Accordingly, UBS AG is entitled to assert its clear right to retain a general lien on the deposited funds.  The relief sought by plaintiff on this motion would have the effect of vacating the contractual lien to which Dr. Martinez agreed, thereby depriving UBS AG of the security interest clearly provided to it in the Terms and Conditions.

(2) Indemnification

Under the Indemnity clause, also not mentioned by plaintiff, UBS AG is entitled to indemnification "for all claims made against us, and all fees . . . arising out of this agreement or your accounts" (Costanza Opp. Decl., Exh. A at 4) unless UBS AG is found to have acted by gross negligence or willful misconduct. Breed, Abbott, & Morgan v. Hulko, 139 A.D.2d 71, 531 N.Y.S.2d 240 (1st Dep't 1988), affirmed, 74 N.Y.2d 686, 543 N.Y.S.2d 373 (1989) (enforcing clause indemnifying escrowee for legal fees in action brought by contracting party).

The first sentence of the Indemnity clause provides for indemnification "for all claims against" UBS AG, and the second sentence absolves UBS AG for errors in judgment, in the absence of willful misconduct or gross negligence. Read as a whole, this clause clearly applies to the underlying action, where plaintiff is suing UBS AG for actions with respect to the accounts and plaintiff is making various claims against UBS AG, including gross negligence. Id. at 73-74, 531 N.Y.S.2d at 242 (holding that the indemnity provision's parts were "clearly

- 11 -

intended to be read together," and that it would be "manifestly untenable" to interpret any other way but to indemnify for legal fees against the opposing party).

Further, the provision at bar expressly states that UBS AG is entitled to indemnification for disputes "arising out of this agreement," which can only be interpreted to mean actions between the parties to the contract, i.e., plaintiff as depositor and UBS AG as bank. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 178-79 (2d Cir. 2005). This is exactly what the Second Circuit held in Mid-Hudson, finding that a provision in the contract, which required indemnification for "actions of any kind or nature, arising ... under this Agreement," indicated that the parties "unmistakably" intended that the provision was meant to include actions between the parties. Id. In short, UBS AG is to be indemnified in actions between the parties where its actions do not amount to willful misconduct or gross negligence.

(3) Freezing of Account

Contrary to plaintiff's assertion, the Freezing of Account clause (Costanza Opp. Decl., Exh. A at 3) legally entitles UBS AG to freeze the account until liability for U.S. estate taxes has been resolved ("upon the death of any accountholder, an account may be frozen until the Bank determines to its satisfaction . . . (iii) that the Bank has no liability for such [estate] taxes"). Plaintiff has put UBS AG's potential liability for federal estate taxes squarely at issue in this action (Complaint, ¶¶ 18-38). UBS AG has denied any liability for such taxes and the matter has not yet been determined.

Additionally, Plaintiff is incorrect in asserting that all U.S. estate taxes have already been paid. Plaintiff's reference is only to federal estate taxes and does not respond to any concerns UBS AG may have regarding estate taxes which may be due to any particular state

- 12 -

in the U.S.[6]  UBS AG did not provide tax advice for this account, nor did it ever warrant that it would do so.  At this stage, it cannot be determined which states of the United States may be entitled to estate taxes from Dr. Martinez' estate funds in this account, let alone the amount they may claim.  Accordingly, the agreement clearly provides UBS AG with the right to freeze the account until these liabilities are resolved.

(4) Consulting Legal Counsel

Lastly, the Legal Counsel fees clause (Costanza Opp. Decl., Exh. A at 3) entitles UBS AG to debit plaintiff's account for any fees incurred by UBS AG in determining the beneficiaries of Dr. Martinez' trusts.  As acknowledged in the complaint, there are at least six potential beneficiaries to Dr. Martinez's funds (see Complaint, ¶¶ 28, 43) and plaintiff admits that all of their rights or claims are "still unresolved" (Complaint, ¶ 3).  UBS AG cannot be assured, if plaintiff were to obtain the funds she seeks, that no claims would be raised against UBS AG as to such funds by any of Dr. Martinez' other beneficiaries.  Because UBS AG has retained counsel in connection with these ongoing issues, and faces the possibility of further litigation with respect thereto, UBS AG is entitled to enforce its legal right to freeze these accounts.

Pursuant to all of these contractual clauses, UBS AG is entitled to retain the remaining funds from Dr. Martinez' account.

B.    At The Very Least, There Is A Dispute About Contractual Language
       Which Requires That Plaintiff's Motion For Summary Judgment Be Denied

By arguing for her preferred interpretation of the Terms and Conditions, plaintiff acknowledges that the question of plaintiff's entitlement to release of the funds turns on

_____

[6] We note that Dr. Martinez had a mailing address in Texas (Ochs Aff., Exh. A at 2) and UBS AG does not know where else he may have held personal or real property.

interpretation of the contractual provisions in the agreement between the parties. By challenging the meaning of the contract, plaintiff, at best, demonstrates that there is a disputed issue of material fact.

In short, the question of whether plaintiff is entitled to release of the funds depends on the Court's ultimate determination of the meaning and intent of the relevant clauses of the contract. Under such circumstances, there are disputed issues of material fact regarding the interpretation of the contract, which require denial of plaintiff's motion for summary judgment. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1537 (2d Cir. 1997). Motions for summary judgment are routinely denied where interpretation of an indemnity clause is at issue. In Katz v. Berisford Int'l, PLC, 1998 WL 684481 at * 6 (S.D.N.Y. 1998), the court denied summary judgment because of ambiguity in an indemnity provision, where the moving party did not submit materials that would resolve the ambiguity. In National Union Fire Ins. Co. of Pittsburgh, PA v. Cooper, 1990 WL 55690 at * 7 (S.D.N.Y. 1990), the court denied summary judgment on a contract claim, noting that a trial was necessary, because different interpretations of an indemnification clause were possible.

As this Court has noted, summary judgment requires that any reasonable inference be drawn in favor of the nonmoving party. Murray, 2007 WL 3254908 at *5. Because plaintiff disputes the meaning of the relevant contractual provisions, and because UBS AG has explained above how these provisions demonstrate that plaintiff is not entitled to relief, any reasonable inference is weighed in favor of UBS AG and summary judgment in favor of plaintiff should be denied.

- 14 -

C.    The Ultimate Relief Sought By Plaintiff Is Dependent On Final
      Resolution Of The Underlying Causes Of Action In The Complaint

The ultimate relief sought by plaintiff is dependent on final resolution of the underlying causes of action, namely, whether UBS AG acted with gross negligence or willful misconduct as alleged by plaintiff. UBS AG is holding funds pursuant to provisions in the contract (discussed above) which place a general lien on deposited funds. According to the Terms and Conditions, in order for plaintiff to avoid this lien and retrieve the entire sum of funds in the account, it must at least necessarily establish that UBS AG has caused harm to plaintiff by UBS AG's gross negligence or willful misconduct (Costanza Opp. Decl., Exh. A, Terms and Conditions, pg. 4) and that plaintiff has no other obligations to UBS AG. Because no facts have been presented by plaintiff to make such a showing, summary judgment must be denied.

Moreover, since UBS AG retains a general lien on the funds until plaintiff's obligations to UBS AG can be determined, Gillman v. Chase, supra, in order to determine that plaintiff is entitled to the relief she seeks, the Court would be compelled to determine the entire merits of the underlying causes of action in UBS AG's counterclaim.

Plaintiff has not put forward any evidence addressed to the merits of her claims and UBS AG's counterclaim, and discovery in this action is only in its early stages. Under such circumstances, plaintiff is not entitled to the summary judgment which she seeks by the present motion.

## POINT III

## PLAINTIFF HAS NOT MET THE HEIGHTENED
## LEGAL STANDARD FOR A MANDATORY INJUNCTION

Plaintiff's motion, in substance, seeks a mandatory injunction (the relief sought in the fourteenth cause of action) that would alter the status quo by commanding UBS AG to release funds it lawfully holds. Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 34 (2d Cir. 1995); See First African Trust Bank Ltd. v. Bankers Trust Co., 1992 WL 276833, * 1 (S.D.N.Y. 1992) (denying preliminary injunction sought by plaintiff depositor to compel bank to release accounts).

In order to obtain a preliminary injunction, a party must show (a) that it will suffer irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. Tom Doherty Assocs., 60 F.3d at 33.

Furthermore, a heightened standard applies where, as here: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits. Id. at 33-34.   Under this heightened standard, the harm shown must be "overwhelming." First African Trust Bank, 1992 WL 276833 at *4.

Plaintiff cannot satisfy the standard for a preliminary prohibitory injunction, let alone the applicable heightened standard for a mandatory injunction.

A.    Plaintiff Does Not Meet The Lesser Standard For A Prohibitory Preliminary Injunction

Plaintiff cannot meet the lesser standard for a prohibitory injunction of irreparable harm and either (1)likelihood of success on the merits or (2) sufficiently serious questions going

to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. <u>Line Communications Corp. v. Reppert</u>, 265 F.Supp.2d 353, 356 (S.D.N.Y. 2003). "The Second Circuit has noted that the irreparable harm requirement is the single most important prerequisite for a preliminary injunction." <u>Id.</u> However, since the possibility of monetary loss does not present a risk of irreparable harm, <u>Id.</u> at 357, and since all that plaintiff seeks by this motion is the money remaining in the 440 Account at UBS AG, there is no irreparable harm as a matter of law and no basis for injunctive relief.

Moreover, it is apparent from the discussion in Point II, <u>supra</u>, that plaintiff has no likelihood of success on this motion and has presented no evidence of likelihood of ultimate success on the merits. <u>See e.g.</u>, <u>Line Comm.</u>, 265 F.Supp.2d at 358 (finding that conclusory allegations and accusations are insufficient to sustain a preliminary injunction for release of funds); <u>Risenhoover v. Bayer Corp. Group Health Plan</u>, 83 F.Supp.2d 408, 410 (S.D.N.Y. 2000) (holding that in order to determine whether plaintiff has established substantial likelihood of success on the merits, court must first examine basis for defendants' decision to deny reimbursement).

Additionally, since plaintiff is a non-resident of the United States, providing the funds to her would leave UBS AG without an enforceable remedy in the event of a judgment in its favor on its counterclaim. <u>First African Trust Bank</u>, 1992 WL 276833 at * 4. The balance of hardships thus tips in favor of UBS AG and not the movant.

B.    Plaintiff Cannot Meet The Higher Standard
       For A Mandatory Injunction

The standard for injunctive relief is even greater where (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with

substantially all the relief sought, and the relief cannot be undone even if defendant prevails at trial on the merits. Tom Doherty Assocs., 60 F.3d at 33-34; First African Trust Bank, 1992 WL 276833 at * 4 (S.D.N.Y. 1992); Line Comm., 265 F.Supp.2d at 357-58. As the Second Circuit noted in Tom Doherty Assocs., such relief should only be granted upon "a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." 60 F.3d at 34; First African Trust Bank, 1992 WL 276833 at * 4 (noting that where plaintiffs seeks ultimate relief, "the irreparable harm shown by movant must be overwhelming"). Because plaintiff cannot meet the general standard for a preliminary prohibitory injunction, she certainly cannot meet the heightened standard for a mandatory injunction.

   Plaintiff must meet the heightened standard because she seeks to alter, rather than maintain, the status quo. Tom Doherty Assocs., 60 F.3d at 34. The relief demanded would compel UBS AG to release bank deposits it lawfully holds under the agreement of the parties. Line Comm., 265 F.3d at 353, 357 (holding plaintiff to heightened standard, because plaintiff's motion to release funds seeks to alter the status quo). Plaintiff's complaint confirms this, characterizing her demand to be for "a mandatory injunction" ordering UBS AG to release funds on deposit (Complaint, ¶ 129).

   In addition, the injunction would provide plaintiff with substantially all the relief sought and that relief cannot be undone even if UBS AG prevails at trial on the merits.

   Here, plaintiff requests by the instant motion all the relief sought as to the held funds. Her fourteenth cause of action specifically demands a "permanent mandatory injunction ordering Defendants to turn over all assets, funds and investments" held on behalf of Dr. Martinez (Complaint, ¶ 129). This is the exact relief that plaintiff demands by this motion. See

- 18 -

Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 60 F.Supp.2d 247, 258 (S.D.N.Y. 1999) (noting that payment of royalties *pendente lite* amounts to a mandatory injunction giving plaintiff the ultimate relief it seeks); First African Trust Bank, 1992 WL 276833 at \* 4 (holding that release of bank deposits to plaintiff would accomplish the ultimate relief sought).

Moreover, an order to release these funds, once complied with, cannot be undone. Plaintiff is a foreign citizen with no asserted ties to the United States. If this Court rules in UBS AG's favor on its counterclaim, a judgment against plaintiff will be nearly impossible to enforce. See First African Trust Bank, 1992 WL 276833 at \* 4 (finding that an order to release funds cannot be undone, where plaintiff is a Nigerian bank not purporting to do business in the United States, and the Court's power to enforce a subsequent order is limited). Plaintiff has already failed to pay its U.S. attorneys in a related matter, requiring another court to uphold an attorney's lien as to documents in the possession of those attorneys. De Gonzalez v. The Custodian of Records of UBS AG, 15 Misc.3d 1108(A), 836 N.Y.S.2d 497 (Sup. Ct. N.Y. Co. 2007).

Under the New York Uniform Commercial Code, "a security interest in a deposit account may be perfected only by control" of the deposit account. McKinney's Uniform Commercial Code, § 9-312(b)(1). Granting the requested mandatory injunction would destroy UBS AG's control over the deposit account and would destroy UBS AG's general lien on the deposits. For the reasons set forth above, such action would be irreversible and therefore unduly prejudicial to UBS AG. First African Trust Bank, 1992 WL 276833 at \* 4. UBS AG should not be deprived of its valuable contractual property right prior to a trial on the merits.

It is clear that plaintiff does not meet the heightened standard for a mandatory injunction of the type sought by the instant motion. Unable to show a likelihood of success, as demonstrated, supra, plaintiff certainly cannot meet the required clear showing of entitlement to

the relief requested. Under such circumstances, it is appropriate to require plaintiff to prove her entitlement to relief on a fully developed factual record after discovery has been completed. Nor can plaintiff show very serious damage since, as discussed above, she cannot show irreparable harm since she seeks only monetary relief.

First African Trust Bank, a case cited by plaintiff to supports her position, is illustrative. 1992 WL 276833. In that case, plaintiff depositor sought to compel defendant bank to release bank accounts, including funds retained for indemnification. Id. at * 1. The court held plaintiffs to a heightened standard, requiring an "overwhelming" showing of irreparable harm. Id. at * 4. The court denied the motion, finding that plaintiff could not meet the applicable standard, Id. at * 6, and subsequently rejected plaintiff's motion to return monies retained by the bank for indemnification of attorney's fees. First African Trust Bank, 1995 WL 422269 at * 1 (S.D.N.Y. 1995).

## CONCLUSION

For the reasons set forth herein, plaintiff's motion to release funds on deposit at

UBS AG should be denied in all respects.

Dated: New York, New York
      February 7, 2008

Respectfully submitted,

HANDLER & GOODMAN LLP

By:_____
      Arthur M. Handler
      Robert S. Goodman
805 Third Avenue, 8th Floor
New York, New York 10022
(646) 282-1900

Attorneys for Defendant, Counterclaim
Plaintiff and Third-Party Plaintiff
UBS AG

- 21 -