UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
LETIZIA MARTINEZ DE GONZALEZ, as                             :
administratrix and executrix of the Estate of                :
Emilio Martinez Manautou, as Trustee of the        **ECF CASE**
Emilio Martinez Manautou Trust, and as Trustee     :
of the EMM Trust,                                            :
                                                             :
       Plaintiff-Counterclaim Defendant,                :
                                                             :
       -against-                                       :
                                                             :    Case No. 07-CV-7462 (RJS)
UBS AG and UBS TRUSTEES LTD.,                                :
                                                             :
       Defendants-Counterclaim Plaintiff               :
                                                             :
       and                                             :
                                                             :
UBS AG,                                                      :
                                                             :
       Third-Party Plaintiff,                          :
                                                             :
       -against-                                       :
                                                             :
ROBERT J. REGER, JR. and THELEN, REID,                       :
BROWN, RAYSMAN & STEINER, LLP,                               :
                                                             :
       Third-Party Defendants.                         :
                                                             :
------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFF'S DEMAND
FOR THE RELEASE OF BANK DEPOSITS**

## TABLE OF AUTHORITIES

Bank of New York Trust, N.A. v. Franklin Advisers, Inc.,
  522 F. Supp. 2d 632 (S.D.N.Y. 2007) .................................................................. 6

Dream Spa v. Fireman's Fund Ins.,
  2008 U.S. Dist. LEXIS 8933, *10-12 (S.D.N.Y. 2008) ........................................ 6

Farook v. Bailey, 2007 U.S. Dist. LEXIS 52748, *3-4 (S.D.N.Y. 2007) ..................... 6

Gaming Mktg. Solutions, Inc. v. Cross,
  2007 U.S. Dist. LEXIS 94117 (S.D.N.Y. 2007) ................................................... 6

Gillman v. Chase Manhattan Bank,
  73 N.Y.2d 1, 537 N.Y.S.2d 787 (1989) ................................................................ 5

MSF Holding Ltd. v. Fiduciary Trust Co.,
  435 F.Supp.2d 285, 304-05 (S.D.N.Y. 2006) ....................................................... 7

Norris v. New York City Hous. Auth.,
  2004 U.S. Dist. LEXIS 8619, *2, n.2 (S.D.N.Y. 2004) .................................... 6-7

Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000) ............................ 6

United States ex rel. Mikes v. Strauss,
  931 F. Supp. 248, 263 (S.D.N.Y. 1996) ............................................................ 5, 7

WGJ Holdings, Inc. v. Greenberg,
  2008 U.S. Dist. LEXIS 850, *5 (S.D.N.Y. 2008) ................................................. 6

## PRELIMINARY STATEMENT

UBS's answering papers only serve to confirm the appropriateness of the relief requested. UBS does not now, and has never, disputed that the deposits belong to the Estate of Dr. Martinez, and, therefore, Ms. Gonzalez, its duly appointed legal representative. Indeed, more than 2 years ago, UBS acknowledged it had no legal right or claim to the deposits or accounts, that it was nothing more than a "stakeholder" – its words, not ours – whose "sole responsibility is to see that the accounts in its possession are paid to the appropriate individuals." See Declaration of Mitchel H. Ochs, dated February 14, 2008 ("Ochs Decl."), Ex. E at 1. Certainly, the fact that Ms. Gonzalez has since sued the Bank arising out of its breach of duties, self-dealing, gross negligence and willful neglect in unnecessarily exposing her father's assets to U. S. estate taxes, and the handling of his wealth transfer – all having nothing whatever to do with the account or account deposits – cannot imbue the Bank with rights to these deposits it all along acknowledged it does not have and never did.

It is not all that surprising then that, on the merits, UBS has little, if anything, to say. Indeed, UBS all but abandons any attempt to explain or identify what deposits it claims it is/was entitled to hold and/or on what basis, as it had at least tried previously. At the pre-motion conference, for example, UBS agreed to release all monies on deposit ($4.9 million), less only $1.6 million, reflecting the amount of Estate Taxes already paid (the "Estate Tax Amount"), based on a provision in its standard form account opening document that it claimed entitled it to continue to hold that amount even after the estate taxes had already been paid, see Ochs Decl., Ex. B (UBS's pre-motion letter) at 2, but in its opposition scarcely makes mention of that provision, undertakes no analysis of it, and, thus, apparently has abandoned that position; see Answering Mem. at 12; at the same time, UBS expressly concedes in its answering papers that

another provision in the same account opening form addressing "costs and fees" – which the Bank first agreed, in open court, did not entitle it to withhold theoretical fees in connection with the underlying litigation, Ochs Decl., Ex. C (plaintiff's letter to the Court requesting briefing schedule for subject motion) at 2, before it reneged on that agreement, Ochs Decl., Ex. D (UBS's letter in response to proposed briefing schedule) at 2, and sought to hold back more than $1 million (the "Attorneys' Fees Amount") – in fact, is limited only to the "costs and fees" incurred in identifying potential beneficiaries of the Estate at the time of the accountholder's death (all of whom it is undisputed have been identified and for which UBS has already taken $80,000.00 of the Estate's money); see Answering Mem. at 13[1]; as to the remaining $2.4 million in deposits (the balance remaining after deducting the Estate Tax Amount and Attorneys' Fees Amount at one point or another in dispute), UBS has always said it would release these balances, and now has nothing new or different to say. Compare Answering Mem. at 1-2, 4-5 with Ochs Decl. at ¶ 8; Ex. D (letter from Robert S. Goodman, Esq. to Judge Sullivan, dated December 19, 2007).[2]

        Stuck with nothing to say on the merits, UBS devotes the bulk of its opposition to arguing that, after three years, this is still not the right time or place to decide the matter; that the Court erred in directing the manner and method for deciding the issue; that the Court, at this point and time, is powerless to decide it; further proceedings are required; unspecified factual issues need to be resolved; ultimate issues of liability need to be tried – all the while entitling the Bank – three years later – to continue to hold deposits until it decides otherwise, including, for example, until it determines to its satisfaction (whatever that means and however that is

---

[1] Both release agreements attached, respectively, as Exhibits B and C to Owen Pell, Esq. (counsel to UBS)'s answering Declaration, identify all potential beneficiaries to the deposits. See Pell Decl., Ex. B, ¶ 2(1); Ex. C, ¶ 6. The August 9, 2005 release agreement further identifies $80,000.00 that UBS deducted for the deposits to pay its own legal fees purportedly incurred in connection with identifying potential beneficiaries and making a distribution. See id., Ex. B, ¶ 3(c).

[2] In his December 19, 2007 letter to the Court, counsel for UBS represented that "UBS AG is offering to release $2.4 million dollar [sic] and retain $2.6 million." Ochs Decl., Ex. D at 2.

measured) that no taxes are due in any of the 50 United States (and, presumably, any territory of the U.S.) and, seemingly, on and on; all a tacit acknowledgment by the Bank that its best chance to "succeed" is a "no-decision", rather than a decision that scrutinizes its position.

UBS's four-corner stall should not be sanctioned. Delay, for the sake of delay, does not come without consequences; since Ms. Gonzalez sought the aid of this Court, UBS has retaliated by denying her all access to the deposits, including her legal right to direct their investment; see Ochs Decl., Ex. F (email from UBS counsel Robert S. Goodman, Esq.); thus, the status quo has and continues to strip Ms. Gonzalez of legal rights and, indeed, legal duties owing to those she represents, to collect and disburse assets in accordance with her father's wishes; at the same time, it rewards UBS's misuses/abuses of legal process by awarding it the ultimate relief it seeks and without any lawful basis: to hold deposits as leverage to gain some advantage during the course of the litigation.

## ARGUMENT

### MS. GONZALEZ IS ENTITLED TO THE IMMEDIATE RELEASE OF ALL REMAINING DEPOSITS AND WITHOUT CONDITION

On opening, Ms. Gonzalez established that the deposits belong to the beneficiaries of the Estate she represents, and not the Bank, and that the Bank is thus duty-bound, as a matter of law, to release those deposits when and as she directs. Opening Mem. at 7-8. Ms. Gonzalez further established that nothing in the general form account opening documents upon which the Bank purports to rely, by their plain terms, under settled principles of contract interpretation and common sense, permit the Bank to withhold the Estate Tax Amount after all estate taxes have, in fact, been paid to the government, id. at 8-13, or to withhold the Attorneys' Fees Amount to cover legal fees not yet incurred, known, or awarded, and in defense of claims

having nothing whatever to do with the location of potential beneficiaries or the administration of the account. Id. at 13-15. Ms. Gonzalez further established that UBS has always recognized that it has no basis, after three years time, to continue to hold the remaining ($2.4 million) deposits. Id. at 8.

UBS, in its opposition, disputes none of this showing. It makes little mention, and undertakes no analysis, of the provisions upon which it earlier relied in its pre-motion submission and at the pre-motion conference, and/or concedes Ms. Gonzalez's showing that none of the provisions entitle it to hold any of the deposits (see, e.g., Ochs Decl., Ex. D at 2); nor does UBS cite a single case interpreting account opening forms to permit the Bank to hold account deposits to indemnify it for claims of wrongdoing by a customer/client having nothing whatever to do with the account or account deposits, and if there were such a case, this Bank no doubt would know of it.

Instead, UBS cites two new provisions in the general forms (pretext/excuses numbers five and six of the Bank for converting the deposits), but it is hard to understand how either provision, one entitling the Bank to offset account balances to cover bounced checks written off an account,[3] the other for indemnification for claims by third parties expressly relating to the account and/or deposits,[4] see Answering Mem. at 9-12, and/or cases it cites which have enforced separately negotiated security agreements, given by a borrower to secure

---

[3] The provision, entitled "General Lien, Right of Set Off and Overdrafts (Answering Mem. at 4)," provides:

> Any and all monies . . . for your account shall be subject to a general lien for the discharge of your obligations to the Bank.
>
> In the event that there is an outstanding amount owed to you by the Bank, the Bank may . . . apply any monies or any other property or deposits . . . to satisfy such indebtedness [emphasis added].

[4] That provision, entitled "Indemnity (Answering Mem. at 4-5)," permits, as follows:

> You agree to indemnify us for all claims made against us . . . arising out of this agreement or your accounts [emphasis added].

- 4 -

repayment of loans to a bank, see, e.g.; Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 537 N.Y.S.2d 787 (1989), have anything whatever to do with the right to retain the deposits. For one thing, Ms. Gonzalez has never passed a bad check and there are, and have never been, any claims by any third parties against the Bank arising out of or relating to the monies on deposit or accounts. Nor do Ms. Gonzalez's claims against the Bank wholly unrelated to the deposits or accounts, Opening Mem. at 6-7, 14, or UBS's counterclaim for contribution or indemnification counter to these unrelated clams, see Opposing Declaration of Arthur Handler, Ex. A (UBS's Counterclaim), ¶¶ 38-39, even potentially implicate these general account provisions or "expose UBS to potential liability for which plaintiff may be liable[,]" Answering Mem. at 11, within their plain meaning, as UBS would have it. See United States ex rel. Mikes v. Strauss, 931 F. Supp. 248, 263 (S.D.N.Y. 1996) ("Counterclaims for indemnification or contribution by defendants only have the effect of offsetting liability. Counterclaims for independent damages are distinguishable[.]").

The remainder of UBS's brief in opposition is devoted to smokescreen arguments that this is the wrong place, time or method for determining the issue. Answering Mem. at 6-7, 15-20. Thus, UBS first argues that if it is wrong on the merits, it is because of an ambiguity in its own account opening documentation. Id. at 14. UBS, for itself, does not identify which provision it believes is ambiguous or how its meaning is unclear or ought to be read contrary to how it is otherwise written out. That aside, UBS's efforts to suggest an ambiguity where none, in fact, exists, is in any event unavailing to it since the law would require this Court to construe any such ambiguity against UBS and in favor of Ms. Gonzalez. See Opening Mem. at 11-12.

UBS next argues that this Court erred in setting the method for resolving the issue and is otherwise powerless to decide it at this stage of the litigation before discovery is

completed. Answering Mem. at 13-15. UBS does not offer up to the Court any facts it claims are in dispute on this issue involving the construction of its non-negotiable account opening forms, or what further proceedings need to be conducted which would lead to the discovery of facts that impact the issue, because there are none.[5] Where, as here, moreover, the sole issue involves the construction of a written agreement (whose terms are not in dispute), such an issue is for a Court to decide as a matter of law. See, e.g., Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000); Bank of New York Trust, N.A. v. Franklin Advisers, Inc., 522 F. Supp. 2d 632 (S.D.N.Y. 2007); Dream Spa v. Fireman's Fund Ins., 2008 U.S. Dist. LEXIS 8933, *10-12 (S.D.N.Y. 2008). See also WGJ Holdings, Inc. v. Greenberg, 2008 U.S. Dist. LEXIS 850, *5 (S.D.N.Y. 2008) (judgment as a matter of law appropriate where "dispute hinges on contract interpretation" of unambiguous contract or where "the language of the contract is ambiguous" but opposing party fails to create a genuine issue of material fact).

Of course, this Court is free to determine the proper procedures and methods for determining this legal issue, and as it sees fit; and, in directing briefing of this narrow legal issue as and in the manner it did – where no issues of fact exist and none ever are claimed – this Court correctly exercised its inherent powers. See Gaming Mktg. Solutions, Inc. v. Cross, 2007 U.S. Dist. LEXIS 94117 (S.D.N.Y. 2007) ("Courts [have] inherent power to control their own proceedings."). See also Farook v. Bailey, 2007 U.S. Dist. LEXIS 52748, *3-4 (S.D.N.Y. 2007) (waiving requirement of Rule 56.1 Statement where "plaintiff has submitted evidence in support of his claims, and the interests of justice weigh in favor of resolving issues on the merits"); Norris v. New York City Hous. Auth., 2004 U.S. Dist. LEXIS 8619, *2, n.2 (S.D.N.Y. 2004) (recognizing Court's inherent power to "consider all admissible evidence in the record, whether

---

[5] UBS's papers are peppered with references to Ms. Gonzalez's pleadings referring to a dispute with one beneficiary but well knows that that dispute has been fully and finally resolved, agreements signed not only with Ms. Gonzalez but also with UBS, and it would be a fraud on the Court for UBS to say otherwise.

contained in the 56.1 Statement or elsewhere").[6] In any event, UBS never objected to the procedures adopted by the Court in either of its pre-motion submissions or at the pre-motion conference.

UBS's argument that Ms. Gonzalez is required to prove to a jury the merits of her claims against it for breach of fiduciary duty, self-dealing, and gross negligence, before it would be entitled to the release of the deposits, Answering Mem. at 15, is a classic red herring argument. In fact, win or lose at trial, Ms. Gonzalez is/would still be, entitled to all the deposits. UBS's counterclaims merely seek proportionate offset of its own liability to Ms. Gonzalez, not an independent claim for damages. See Handler Decl., Ex. A ¶¶ 38-39. Even were UBS to prevail then, its counterclaim for indemnification or contribution would only have the effect of offsetting its liability. See, e.g., United States ex. rel. Mikes, 931 F. Supp at 263 (S.D.N.Y 1996).

Finally, UBS disingenuously invokes standards for injunctive relief as part of its desperate, if sharp, practices to burden shift. Answering Mem. at 16-20. In following this Court's directive to submit briefs on the narrow issue of the construction of a provision in account opening forms, Ms. Gonzalez is not seeking an injunction, mandatory or otherwise, but a determination as to the meaning of those provisions that this Court has already found to be ripe for determination; the fact that UBS will have to release the monies admittedly belonging to the Estate after this Court determines that the Bank had no legal right to hold those deposits, does not transform this legal issue of contract interpretation into one for mandatory injunctive relief

---

[6] Indeed, the case relied on by UBS for the proposition that the relief requested is unavailable without a Rule 56.1 Statement, Answering Mem. at 7, actually stands for the opposite proposition. See MSF Holding Ltd. v. Fiduciary Trust Co., 435 F.Supp.2d 285, 304-05 (S.D.N.Y. 2006) (denying defendant's cross-motion for summary judgment for failure to file a 56.1 Statement, but thereafter granting summary judgment sua sponte in favor of defendant on the same issue where the parties "do not dispute a dispositive material fact, and merely disagree as to the consequence of that undisputed material fact under the law").

any more than any ordinary contract dispute, the resolution of which will call on one party to pay the other, would.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in her opening brief, Ms. Gonzalez is entitled to the full return of all deposits wrongfully held by UBS, forthwith, and without conditions or limits, an award of costs, including attorneys' fees, together such other and further relief as to this court seems just and fair.

Dated: New York, New York
       February 14, 2008

 

ANDERSON & OCHS, LLP

By: _____
   Mitchel H. Ochs (MO-7796)
   Chase C. Vergari (CV-0601)
61 Broadway, Suite 2900
New York, New York 10006
(212) 334-3600

*Attorneys for plaintiff Ms. Gonzalez*

TO:   Robert S. Goodman, Esq.
      Handler & Goodman, LLP
      805 Third Avenue, 8th Floor
      New York, New York 10022

      *Attorneys for Defendant-Counterclaim*
          *Plaintiff UBS AG*

      David Elsberg, Esq.
      Quinn Emanuel Urquhard Oliver &
          Hedges, LLP
      51 Madison Avenue, 22nd Floor
      New York, New York 10010

      *Attorneys for Third-Party Defendants*
          *Robert J. Reger, Jr. and Thelen,*
          *Reid, Brown, Raysman & Steiner,*
          *LLP*