UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

                                                            :

LETIZIA MARTINEZ DE GONZALEZ, as
administratrix and executrix of the Estate of       :        **ECF CASE**
Emilio Martinez Manautou, as Trustee of the
Emilio Martinez Manautou Trust, and as Trustee  :
of the EMM Trust,                                     Case No. 07-CV-7462 (RJS)

                                            :

             Plaintiff-Counterclaim Defendant,

                                            :

             -against-

                                            :

UBS AG and UBS TRUSTEES LTD.,            **REPLY DECLARATION**
                                          :      **OF MITCHEL H. OCHS**

             Defendants-Counterclaim Plaintiff

                                            :

             and

                                            :

UBS AG,

                                            :

             Third-Party Plaintiff,

                                            :

             -against-

                                            :

ROBERT J. REGER, JR. and THELEN, REID,
BROWN, RAYSMAN & STEINER, LLP,              :

             Third-Party Defendants.         :

                                            :

-------------------------------------------------------------- X

        MITCHEL H. OCHS, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

        1.      I am counsel to plaintiff, Letizia Martinez de Gonzalez ("Ms. Gonzalez"), in this action.

        2.      Annexed as Exhibits A and B, respectively, are pre-motion letters submitted by Ms. Gonzalez and defendant UBS AG ("UBS" or the "Bank").

3.      I appeared at the pre-motion conference held before the Court on December 5, 2007.

4.      Following argument, and with the aid of the Court, UBS agreed, in open court, to release all ($4.9 million), but $1.6 million, remaining on deposit with the Bank, representing the amount of U.S. Estate Taxes already paid (the "Estate Tax Amount"), subject only to the condition that all beneficiaries agree to a limited release in favor of UBS, releasing it of any liability for the distribution to Ms. Gonzalez at this time, which they all agreed to do. No other conditions were discussed and/or sought; no further negotiations regarding the terms and conditions of the agreed upon amount to be released were had.

5.      At the December 5 conference, the Court did say that it would require limited briefing on the meaning of a provision in the account opening forms which the Bank claimed entitled it to continue to hold the Estate Tax Amount during the pendency of this litigation, before it could/would rule with respect to the issue; that provision was as follows:

> You agree that, upon the death of any accountholder, your account may be frozen until the Bank determines to its satisfaction (i) that all U.S. estate taxes due in connection with the accountholder's death have been paid, (ii) that no such taxes are payable or (iii) that the Bank has no liability for such taxes.

6.      At no time during the conference, or at any time afterwards, did UBS claim that it was premature to decide the issue, or that further proceedings were necessary.

7.      At the conclusion of the conference, and on my request, the Court set a December 19, 2007 "control date" by which the parties were to report as to whether

they had also resolved the issue of the Estate Tax Amount or would require the Court to decide the issue.

8.    Annexed as Exhibits C and D, are copies of letters from me to the Court, and from counsel to UBS to the Court, respectively, both dated December 19, 2007.

9.    By Memorandum Endorsed letter, the Court directed the parties to submit briefing on the scope and meaning of the account opening form provision in dispute.

10.    Annexed as Exhibit E, is a copy of a letter from Owen C. Pell, Esq., counsel to UBS, to William D. Signet, Esq., counsel to Ms. Gonzalez, dated August 12, 2005.

11.    Annexed as Exhibit F, is a copy of an email, dated February 4, 2008, from Robert Goodman, Esq. to me.

12.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       February 13, 2008

Mitchel H. Ochs

**Exhibit A**

MITCHEL H. OCHS
MEMBER
mochs@andersonochs.com

November 1, 2007

**BY HAND**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 615
New York, New York 10007

       Re:    *Martinez de Gonzalez v. UBS AG, et an.*
                Case No. 07 CIV 7462 (RJS)

Dear Judge Sullivan:

        We are counsel to plaintiff Letizia Martinez de Gonzalez ("Ms. Gonzalez"), as trustee and duly appointed Executrix/Administratrix of the Estate of her father, Dr. Emilio Martinez Manautou, ("Dr. Martinez"), in the above referenced action.  In accordance with Rule 2.A of this Court's Individual Rules of Chambers, and the Court's Order of October 12, 2007, I respectfully write to request a pre-motion conference for leave to move this Court for an Order directing defendant UBS AG ("UBS") to account for, and to return, more than $4.8 million in an account at UBS held (for more than 3 years) in the name, and for the benefit, of Ms. Martinez and the other beneficiaries of Dr. Martinez's estate and trusts.

<u>BACKGOUND</u>

        As of the date of Dr. Martinez's death in December, 2004, UBS held approximately $20 million of estate/trust monies in four separate accounts held either in the name of Dr. Martinez, the Martinez Family Trust, and/or jointly in the names of Dr. Martinez and Ms. Gonzalez.[1]  UBS initially refused to turn over any of the $20 million it was holding,

---

[1] These monies were held as follows:

| Account | Amount | Account Holder |
| --- | --- | --- |
| Acct. No. 202440 | $12.5 million | (Dr. Martinez) |
| Acct. No. 322826 | $3.1 million | (Dr. Martinez w/ Ms. Gonzalez as beneficiary) |
| Acct. No. 325504 | $4.0 million | (Martinez Family Trust) |
| Acct. No. 201995 | $835,000.00 | (Dr. Martinez and Ms. Gonzalez jointly) |

ANDERSON & OCHS, LLP

The Honorable Richard J. Sullivan
November 1, 2007
Page 2

including those monies held in the name of Dr. Martinez and Ms. Gonzalez as joint depositors, unless and until Ms. Martinez was duly qualified as Executrix/Administratrix of Dr. Martinez's Estate.  In or about August, 2005, Letters Testamentary issued in the Texas Probate Court duly appointing Ms. Gonzalez as legal representative of the Estate of her father in connection with all U.S.-based assets held in the name, and for the benefit, of his Estate.

Beginning in or about April, 2005, through December 2005, UBS agreed conditionally[2] to release certain monies held in accounts in the name of Ms. Gonzalez and Dr. Martinez, as joint depositors, and/or Dr. Martinez and/or one of Dr. Martinez's trusts, leaving approximately $4.8 million in account No. 202440, in the name, and for the benefit, of Dr. Martinez's Estate.  UBS has now held this money for more than 3 years and, at various times, in non-interest bearing accounts.  Despite due and repeated demands by Ms. Martinez, UBS has failed and refused to turn these remaining funds over to Ms. Martinez, as Executrix/Administratrix of  Dr. Martinez's Estate.

PROPOSED MOTION FOR AN
ORDER DIRECTING AN
ACCOUNTING AND THE RETURN
OF MONIES BELONGING TO MS.
GONZALEZ AS EXECUTRIX
AND/OR THE ESTATE OF DR.
MARTINEZ

There is no dispute that the monies sought belong to Dr. Martinez's estate and/or its beneficiaries, and that UBS has absolutely no right or legal claim to any of it.  UBS, nevertheless, has refused, and continues to refuse, to release the remaining approximately $4.8 million, claiming that it is somehow entitled to hold this money, "as security," against one or more claims by potential beneficiaries who either may assert a claim against UBS (arising out of the actions and transactions that are the subject of this action), and/or an interest in the monies UBS previously released more than 2 years ago.

The fact is that nearly 3 years since Dr. Martinez's death, there have been no claims by any potential beneficiaries to any of the monies earlier released to Ms. Martinez.[3]  As a matter of law, to the extent UBS believes it is holding money which it further speculates might potentially be the subject of competing claims by others, UBS – admittedly no more than a

---

[2] UBS agreed to turn over this money only on condition that Ms. Gonzalez agree to indemnify UBS against any claims to the monies released, and agree to allow UBS's to take more than $80,000.00 in "fees" for itself, and its lawyers, which it did.

[3] One potential beneficiary did assert a claim against other estate/trust monies and a separate claim against UBS; those claims have been finally and fully resolved with that potential beneficiary delivering full releases in favor of both Ms. Gonzalez (and in her various capacities) as well as UBS.

ANDERSON & OCHS, LLP

The Honorable Richard J. Sullivan
November 1, 2007
Page 3

stakeholder of monies belonging to others – is compelled either to return these monies to the rightful owners on the Account or, at a minimum, deposit the monies into this Court. 28 U.S.C.S. § 1335 (2007). What UBS may not/cannot do, is hold this money – which admittedly it has no right to or interest in – for an indefinite period of time, for its own financial protection or gain, or as it sees fit.[4]

                *             *             *

        In short, plaintiff respectfully requests leave of Court to file a motion seeking the release of the more than $4.8 million held by UBS for more than 3 years, a full accounting by UBS, together with additional compensation to the Estate based on a reasonable, assumed, rate of return on these assets during the time they were held in a non-interest, and/or below market interest bearing, account.

                        Respectfully submitted,

                        Mitchel H. Ochs

MHO:kc
1860.05

cc:     Owen Pell, Esq. (By Hand)

---

[4]  UBS, in its Answer, also made some obtuse reference to the account opening documents as a basis for continuing to hold the monies belonging to Dr. Martinez's Estate indefinitely. See Answer, ¶ 46 ("[UBS] states that assets in account YR-202440 are retained by UBS in accordance with the written account agreements executed by Dr. Martinez").

**Exhibit B**

WHITE & CASE

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial + 212 819 8891    OPell@whitecase.com

November 6, 2007

BY HAND

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 615
New York, New York 10007

Re:    Gonzales v. UBS AG and UBS Trustees LTD., No. 07 CIV 7462 (RJS)

Dear Judge Sullivan:

We represent Defendant UBS AG in the above-captioned action. We are responding to the November 1, 2007 letter from Anderson & Ochs (the "Ochs Accounting Letter"), counsel to Plaintiff Letizia Martinez de Gonzalez ("Plaintiff"), requesting a pre-motion conference to seek leave to file a motion for an Order directing UBS AG to account for and return the assets remaining in accounts originally opened by Plaintiff's father, Dr. Emilio Martinez Manautou ("Dr. Martinez").   For the reasons set forth below, UBS AG respectfully submits that Plaintiff's request should be denied.

Factual Background

Plaintiff's claims arise out of a banking relationship between Plaintiff's late father, Dr. Martinez, and UBS AG that began in 1998.  Dr. Martinez had a number of accounts with UBS AG's New York Branch, including two held jointly with his eldest daughter, Plaintiff Gonzalez. Some of Dr. Martinez's accounts tied into two trusts he created (collectively, the "Martinez Trusts").  Plaintiff now alleges that UBS AG acted wrongfully in how it maintained those accounts.  UBS AG has made clear in its Answer, Counterclaim and Third-Party claim that it disputes Plaintiff's version of the facts and all of Plaintiff's claims.

The Ochs Accounting Letter asserts that UBS AG has no basis for continuing to hold a portion of the over $20 million that had been placed with the bank by Dr. Martinez.  In making this claim, however, Plaintiff has ignored the terms of the contracts that govern the accounts at issue.  Thus, Plaintiff's proposed motion is an attempt to circumvent the process by which Plaintiff actually must prove and prevail on its claims, and Plaintiff's request should be denied.

NEWYORK 6336243 (2K)

The Honorable Richard J. Sullivan

November 6, 2007

### UBS AG Is Contractually Entitled to Hold The Martinez Account Assets

Each account at UBS AG was governed by an account agreement. Under the express terms of the account agreements, UBS AG had no discretionary authority over the accounts nor was it providing tax or investment advice to Dr. Martinez (who was represented by counsel, and had his attorney as co-trustee of the Martinez Trusts until Plaintiff became co-trustee four months before Dr. Martinez's death in December 2004).[1]

Although ignored in the Ochs Accounting Letter, Dr. Martinez's account agreements expressly provide for UBS AG to hold funds under the specific circumstances presented here:

> [U]pon death of any accountholder, [an] account may be frozen until [UBS AG] determines to its satisfaction (i) that all U.S. estate taxes due in connection with such account holder's death have been paid, (ii) that no such taxes are payable or (iii) that [UBS AG] has no liability for such taxes.[2]

Plaintiff has put UBS AG's potential liability for estate taxes squarely in issue here, and UBS AG has repeatedly denied any liability for those taxes. Under the account agreements, UBS may hold assets in the accounts pending resolution of those claims.

Also absent from the Ochs Accounting Letter is any mention of UBS AG's right to indemnification for legal fees and costs relating to distribution of the account assets upon Dr. Martinez's death:

> [UBS AG] specifically has the right to consult with legal counsel in any jurisdiction which it deems necessary for the purpose of determining [the] successor(s), heir(s), executor(s), administrator(s) and distributee(s) prior to distributing the assets in [the] account upon [the account holder's] death. The account(s) will be debited for any and all fees, expenses, legal liabilities, losses, demands, damages, costs, charges, counsel fees or other expenses incurred by the Bank in connection with the foregoing.[3]

As is clear from UBS AG's Answer and Counterclaim, there are serious questions regarding Plaintiff's actions with respect to these bank accounts and the rights of other beneficiaries of the Martinez Trusts. Those questions include efforts by Plaintiff to shift millions of dollars away from certain beneficiaries of the Martinez Trusts toward herself. Absent a resolution of these issues, UBS AG could not release the remaining account funds to Plaintiff without facing significant claims from other Martinez estate beneficiaries. Indeed, it is precisely those types of claims that were lodged against Plaintiff in the Texas Probate Court proceedings cited in Plaintiff's Complaint. *See* Complaint, at ¶ 3.

---

[1] Note 1 of the Ochs Accounting Letter incorrectly lists the account holders and beneficiaries for various accounts. Those inaccuracies have no bearing on why Plaintiff's proposed motion makes no sense and thus are not addressed here.

[2] *See* UBS Account Application, General Terms and Conditions of Accounts, at 3.

[3] *Id.*

2

The Honorable Richard J. Sullivan

**WHITE & CASE**

November 6, 2007

In arguing that all remaining funds should be released now, Plaintiff represents that "[t]he fact is that nearly 3 years since Dr. Martinez's death, there have been no claims by any potential beneficiaries to any of the monies earlier released to Ms. Martinez." (Ochs Accounting Letter at 2 and n.2) This is misleading. There are at least six potential beneficiaries to the Martinez funds. As admitted in the Complaint, Plaintiff has actively litigated claims (regarding her alleged breaches of duty) with at least one potential beneficiary. As alleged in the Complaint, this litigation "is still unresolved." Complaint, at ¶ 3. Indeed, notwithstanding the settlement mentioned in the Ochs Accounting Letter, UBS AG understands that discovery is continuing as to at least one other beneficiary in the Texas probate proceedings. Moreover, the fact that beneficiaries are waiting for Plaintiff and UBS AG to resolve their dispute in no way proves that there would not be claims were UBS AG to release all the funds to Plaintiff.

Finally, it is undisputed that UBS AG has worked with Plaintiff to release funds from the Martinez accounts notwithstanding its ongoing dispute with Plaintiff. At the time of Dr. Martinez's death, his accounts with UBS AG held about $20 million. Of that, some $15 million has been released to Plaintiff under two release and receipt agreements. Thus, Plaintiff has had access to over 75 percent of the funds that were in UBS AG, and the funds still held relate directly to live claims among the parties.

Plaintiff's proposed motion seeks to ignore the account agreements. That, however, is relief that is contingent on Plaintiff establishing its claims against UBS AG, which claims are being actively contested. Given the significant factual and legal disputes between the parties, Plaintiff's proposed motion is premature. Accordingly, the Court should deny Plaintiff's request for leave to pursue the proposed motion.

Respectfully submitted,

Owen C. Pell
(OCP-0118)
Counsel for Defendant UBS AG

cc:    Mitchel Ochs, Esq.
       Counsel to Plaintiff

3

**Exhibit C**

# ANDERSON & OCHS, LLP

61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006
TELEPHONE (212) 344-3600
TELECOPIER (212) 344-0970
WWW.ANDERSONOCHS.COM

MITCHEL H. OCHS
MEMBER
mochs@andersonochs.com

December 19, 2007

**BY HAND**

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 615
New York, New York 10007

      Re:   Martinez de Gonzalez v. UBS AG, *et an.*
           Case No. 07 CIV 7462 (RJS)

Dear Judge Sullivan:

      This Firm represents plaintiff Letizia Martinez de Gonzalez ("Ms. Gonzalez"), as trustee and duly appointed executrix of the estate of her father, Dr. Emilio Martinez Manautou ("Dr. Martinez").

      As the Court requested, I write following on the Scheduling and Pre-Motion Conference held on December 5, 2007, to advise the Court of the current status with respect to Ms. Gonzalez's request for the immediate release of all remaining funds, approximately $4.9 million, on account with UBS in the name, and for the benefit, of Dr. Martinez and his estate, and to request approval of a proposed briefing schedule for a motion, now made necessary by UBS AG's refusal to honor its in Court agreement, to immediately release certain funds.

      By way of brief background, on November 1, 2007, Ms. Gonzalez sought leave to make a motion for an order requiring the release of the $4.9 million (the "Account Balance") on account with, and held by, UBS for more than three years. By letter dated November 6, 2007, UBS opposed the request in its entirety.

ANDERSON & OCHS, LLP

The Honorable Richard J. Sullivan
December 18, 2007
Page 2

At the December 5 conference, and with the aid of the Court, UBS agreed in open

Court to release the Account Balance less approximately $1.6 million (reflecting the amount of estate

taxes to which Dr. Martinez's estate was unnecessarily subject and which taxes the estate already

paid (the "Estate Tax Amount")), or a total distribution of approximately $3.3 million (the

"Distribution Amount"), subject only to all beneficiaries providing releases in favor of UBS AG of

any and all claims relating to the distribution of the Distribution Amount.  No other conditions or

exceptions were discussed or imposed.

In accordance with the parties' agreement, on December 11, 2007, I provided UBS

AG's counsel with a form of Release and Distribution Agreement, along the lines previously entered

into by the parties with respect to prior distributions, providing for the immediate release of the

agreed upon Distribution Amount.

On December 17, 2007, counsel to UBS advised, and for the first time, that in

addition to the Estate Tax Amount, it was no longer willing to release an additional, unidentified

amount in excess of $1 million, claiming it is entitled to hold this sum in reserve and indefinitely to

indemnify itself for possible legal fees in connection with the litigation of the underlying claims in

this lawsuit (the "Attorneys' Fees Amount"), notwithstanding its prior agreement in open Court to

the contrary.  Counsel did advise that UBS AG would agree immediately to release approximately

$2.2 million (the Account Balance less the Estate Taxes and Attorneys' Fees Amount) without

further condition or limitations.

On December 18, 2007, I again spoke with counsel for UBS AG, who suddenly, and

without explanation, advised that UBS AG now was no longer willing to agree to release any of the

Account Balance, further reneging on its agreement in open Court, unless and only if Ms. Gonzalez

ANDERSON & OCHS, LLP

The Honorable Richard J. Sullivan
December 18, 2007
Page 3

first agreed not to seek the release of the Estate Tax Amount UBS continues to hold. UBS AG's

position is directly contrary to the representations made, and the agreement reached, in open Court,

and with the assistance of Your Honor, necessitating the need now to file an omnibus motion for the

release of all funds.

I discussed with counsel to UBS AG the following briefing schedule, taking into

account the upcoming holiday season:

Opening Brief due January 18, 2008;

Answering Brief due February 1, 2008;

Reply Brief due February 8, 2008.

Should the proposed briefing schedule be acceptable to the Court, I will advise UBS

AG's counsel accordingly. In the meantime, I am available, at the Court's convenience, to discuss

this matter if and as the Court wishes.

Respectfully submitted,

Mitchel H. Ochs

MHO:kc
1860.05
cc:    Robert Goodman, Esq. (By Hand)

**Exhibit D**

# HANDLER & GOODMAN LLP

Attorneys At Law

805 Third Avenue
New York, New York 10022

646-282-1900

Facsimile: 646-282-1905                                    **Writer's E-mail Address:**
**Writer's Direct Line:**                                  rsgoodman@handlergoodman.com
646-282-1902

December 19, 2007

**BY HAND**

The Honorable Richard J. Sullivan
United States District Judge
United States Courthouse
500 Pearl Street, Room 615
New York, New York 10007

Re:   Martinez de Gonzalez v. UBS AG, *et ano.*
      Case No. 07 Civ 7462 (RJS)

Dear Judge Sullivan:

We represent defendant UBS AG in the above-entitled action. Pursuant to the Court's order of December 5, 2007, I am submitting this letter on behalf of defendant UBS AG to advise the Court that the parties have not resolved any or all issues relating to the funds currently being held by UBS AG which are at issue in this litigation and that plaintiff intends to proceed with her proposed motion for an accounting pursuant to the briefing schedule set forth herein, provided such schedule meets with the Court's approval.

We offered to do a joint letter with plaintiff as the Court directed, but plaintiff's counsel has insisted on delivering his own letter.

As an initial matter, UBS objects to plaintiff advising the Court of plaintiff's view of discussions which are confidential settlement discussions. In doing so, plaintiff improperly goes beyond the scope of the order of December 5 which required only that the parties advise the Court if they had resolved any issues as to the currently held funds and if plaintiff would be proceeding with her motion for an accounting. Nothing further was required.

I have spoken to Owen Pell of White & Case, UBS AG's prior counsel, and been advised that plaintiff counsel's letter does not accurately reflect the proceedings in Court on December 5 or the discussions thereafter between counsel.

## HANDLER & GOODMAN LLP

The Honorable Richard J. Sullivan
December 19, 2007
Page 2

At the December 5 conference, the parties explained their positions to the Court. Plaintiff seeks release of all the remaining funds in the hands of UBS AG. UBS AG's position is that under the account agreement governing the account in question, it may withhold (i) funds relating to plaintiff's tax claims; and (ii) funds relating to legal fees UBS AG has incurred and is incurring in this matter. UBS AG is not seeking to withhold funds relating to plaintiff's other claims. UBS AG also made clear that it sought a release similar to that used before to release other funds to plaintiff.

UBS AG's counsel has provided to plaintiff's counsel a proposed form of release and distribution agreement pursuant to which UBS AG is offering to release approximately $2.4 million dollars and retain $2.6 million. Plaintiff disagrees with UBS AG's position.

Accordingly, plaintiff has advised that she will pursue her motion. The following briefing schedule has been discussed with plaintiff's counsel, subject to the Court's approval:

Opening Brief by plaintiff due January 18, 2008;

Answering Brief by UBS AG due February 1, 2008;

Reply Brief by plaintiff due February 8, 2008.

I am available, at the Court's convenience, to discuss this matter if the Court wishes.

Respectfully yours,

Robert S. Goodman

RSG:sd
(3250-02)

cc: Mitchel H. Ochs, Esq. (by facsimile) (212-344-0970)

**Exhibit E**

AH FE ST CASE

**White & Case LLP**
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial + (212) 819-8891     opell@whitecase.com

August 12, 2005

<u>VIA E-MAIL AND FEDEX</u>

William D. Signet, Esq.
Signet Ramos Abogados
4100 Flagstaff
Austin, Texas 78759

Re:  Estate of Emilio Martinez
     Accounts YR 202440 and 322826

Dear Bill:

Thank you for your letter of August 2nd regarding the above-referenced accounts. We appreciate your effort and desire to confirm and clarify the position of your client. We will reciprocate here with another and hopefully successful effort to confirm and clarify UBS's position.

We greatly appreciate your confirming that Mrs. González has applied to become an ancillary executor of Dr. Martinez' estate in the State of Texas and that she plans to file a timely U.S. estate tax return. As you note, this action would remove UBS from responsibility under the statutory executor rules. As for the estate taxes, it is not surprising that the family did not expect this issue to arise, particularly given our understanding that Dr. Martinez was at all relevant times represented by counsel qualified to give him appropriate U.S. estate tax advice. As you know, UBS does not, and may not, render U.S. tax advice to its clients. Regarding the preparation of the return, UBS will be pleased to provide any information in its possession that is needed by Mrs. González. I also can confirm that I have spoken to Don Scheier at Withum and told him that we will be providing the name of someone at UBS with whom he can speak about information needed for the tax filing (I told Don that we will have a name for him when our UBS contact returns from vacation in a week or so – he was fine with that.)

To recap what we have discussed before, UBS's position in this matter is simple: UBS is a stakeholder, and in that capacity, UBS's sole responsibility is to see that the accounts in its possession are paid to the appropriate individuals. Clearly, Dr. Martinez' intentions with respect to Acct. #202440 and Acct. #322826, at times seemingly overlapping, can be questioned. UBS therefore desires that the relevant parties resolve once and for all the outstanding questions

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS     PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

NEWYORK 5081423 v7
(2K)

William D. Signet, Esq.

August 12, 2005

regarding the accounts among themselves so that the accounts may be turned over by UBS with the knowledge that there are no outstanding claims by any party. UBS would prefer a "global" settlement of the accounts, as opposed to the piecemeal approach you propose, for several reasons. Most importantly, although the two accounts represent separate legal entities as you observe, the major legal difficulties relate to the documentary evidence of Dr. Martinez' intentions and directions that cannot be easily disentangled as between the two accounts. As matters stand, we are concerned about how one account could be fairly addressed without simultaneously dealing with the other. Also, a global solution has the advantage of being more efficient and less costly for all involved. We regret any misunderstanding regarding the procedures available for a family settlement under Texas law, but we do not think this point is significant if, as you indicate, Texas law would permit an appropriate form of voluntary settlement among the parties.

It is *not* true that UBS has not made available to your client all relevant information in its possession. It *is* true that UBS does not have the complete picture. In this regard, we were happy to learn of Mr. Reger's re-involvement because of his longtime association with Dr. Martinez as counsel and as importantly as co-Trustee and co-director of the transfer of the securities from Merrill to UBS for Acct. #322826 a few months before Dr. Martinez' death.[1] Presumably, he is in a position to provide us all with valuable additional information.

You indicate in your letter that as soon as Mrs. González becomes qualified as an executor in Texas she intends "to request transfer of all funds in account 202440 to an account in the name of the Martinez Trust" and that it is your "firm expectation" that such request will be honored by UBS without condition or requirement. You go on to state that UBS should not be "prejudiced" by this action, since the relevant parties would be free to take action against the same accounts at the new U.S. bank. In making these points, however, you have ignored the significant uncertainty regarding the status of Acct. #202440, and also the fact that UBS is here subject to New York law, not Texas law. As noted below, Mrs. González' appointment as an executor in Texas does not necessarily allow her to mandate the transfer of the account nor does it relieve UBS of its responsibilities with respect to the account under New York law.

If Acct. #202440 is a true trust account continuing to be held under the Martinez Trust documentation described in footnote 2, as has been suggested, then Mrs. González would be authorized as surviving Trustee of the Martinez Trust[2] to give UBS directions regarding payment

---

[1] Acct. #322826 has sometimes been referred to as the "EMM Trust." The "EMM Trust" refers to the EMM Trust Agreement dated May 6, 1999, between Emilio Martinez Manautou, as Grantor, and Robert J. Reger, Jr., as Trustee, as amended by an Amendment thereto dated May 22, 2003. By instrument dated August 26, 2004, Mr. Reger resigned as Trustee and by instrument dated August 31, 2004, Mrs.González was appointed as Successor Trustee. She accepted her appointment by instrument dated August 31, 2004. These trust documents appear to have been delivered by Mr. Reger's office to UBS around the time of the transfer from Merrill Lynch.

[2] We assume the "Martinez Trust" refers to the Trust Agreement dated March 7, 1994 between Emilio Martinez Manautou, as Grantor, and Emilio Martinez Manautou and Robert J. Reger, Jr., as Trustees, as amended thereto by two Amendments dated August 28, 1997 and June 23, 2004, respectively. By instrument dated August 26, 2004, Mr. Reger resigned as Trustee and by instrument dated August 31, 2004, Mrs.González was appointed as Successor Trustee. She accepted her appointment by instrument dated August 31, 2004. Again, these instruments appear to have been delivered by Mr. Reger's office to UBS.

2

NEWYORK 5081423 v7
(2K)

William D. Signet, Esq.

August 12, 2005

of the account and, upon completion and execution of the appropriate paperwork and releases, UBS would be able to transfer the funds as requested.

If Acct. #202440 is not a trust account, or that trust account, then Mrs. González' authority as an executor under Texas law is not controlling, since an executor appointed in a state may generally account only for assets located in that state. In general, UBS's ability to follow the instructions of a foreign fiduciary is controlled by New York law, which states that a person or fiduciary in New York "may pay or deliver" personal property located in the state to a foreign fiduciary without a court order, and that "the receipt and acquittance from such foreign fiduciary is a sufficient release and discharge of the person or fiduciary paying or delivering such property." (See NY EPTL Section 13-3.4.) Significantly, this statute provides a safe harbor only for the release of property to a foreign fiduciary who is authorized by the laws of the foreign jurisdiction where the decedent was domiciled. Because we now understand that Dr. Martinez was not domiciled in Texas, UBS cannot rely on this statute and therefore would not receive a statutory discharge for payments made to Mrs. González as a Texas executor. In short, UBS would, in fact, potentially bear liability under New York law for following the directions of a foreign fiduciary, unless the express requirements of the New York EPTL statute are met. In this circumstance, and in the absence of some kind of settlement or release of the relevant parties that is acceptable to UBS, the only safe course of action for UBS would be to demand the appointment of an ancillary executor in New York. Let me stress, we are not making that demand nor are we presently contemplating such a demand because we remain optimistic that we can work with you and your client to achieve a resolution that is satisfactory for all. We raise the point so that there is no misunderstanding regarding the requirements of New York law and the procedures that would have to be followed absent the type of consensual resolution of this matter that we all continue to work toward.

We look forward to hearing from you.

Very truly yours,

Owen C. Pell

OP:jb

cc:    Jennifer Hochberg
       Maureen D. Donovan
       Andrew Auchincloss

3

**Exhibit F**

## Mitchel Ochs

**From:**   Robert Goodman [rsgoodman@handlergoodman.com]
**Sent:**   Monday, February 04, 2008 4:37 PM
**To:**     Mitchel Ochs
**Subject:** Martinez v. UBS AG (3250-02)

Mitchel:

I do not agree.

Since there is a litigation presently pending and the remaining deposits are the subject of plaintiff's pending motion for release of the funds, we do not consent to direct communications with our client. I believe all communications should be between counsel of record and certainly not between another lawyer for plaintiff and a lay person at the bank. Please advise your client and Mr. Signet of the foregoing. Your cooperation would be appreciated.

Robert S. Goodman, Esq.
Handler & Goodman LLP
805 Third Avenue, 8th Floor
New York, New York 10022
Direct Dial: 646-282-1902
Fax: 646-282-1905
Cell Phone: 914-419-0077

The information contained in this e-mail communication and any attached documentation may be privileged, confidential or otherwise protected from disclosure and is intended only for the use of the designated recipients. If the reader or recipient of this communication is not the intended recipient, or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, you are hereby notified that any review, dissemination, distribution, copying or other use of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail and promptly delete the original electronic communication and attached documentation. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege.

**From:** Mitchel Ochs [mailto:mochs@andersonochs.com]
**Sent:** Monday, February 04, 2008 4:12 PM
**To:** Robert Goodman
**Subject:** Heard from Letizia

Bob:

   I can confirm that Letizia did call but only to discuss investment of the remaining deposits on account with the Bank; Bill Signet may follow up on that subject, and that subject alone; I do not see this as a problem; let me know if you disagree. Thanks.

_____
Mitchel H. Ochs, Esq.
Anderson & Ochs, LLP
61 Broadway, Suite 2900
New York, NY 10006
(212) 344-3600 Tel
(212) 344-0970 Fax
www.andersonochs.com

This message, together with its attachments, if any, may contain information that is legally privileged and/or confidential, and is intended only for the use of the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or of its contents, or any attachments, is strictly prohibited. If you have received this message in error, please notify the original sender immediately by return e-mail or by telephone (212-344-3600) and delete the message, along with any attachments thereto, from your computer. Thank you.

Case No. 07-CV-7462

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LETIZIA MARTINEZ DE GONZALEZ, as administratrix and executrix of the
Estate of Emilio Martinez Manautou, as Trustee of the Emilio Martinez
Manautou Trust, and as Trustee of the EMM Trust,

               Plaintiff-Counterclaim Defendant,

      -against-

UBS AG and UBS TRUSTEES LTD.,

               Defendants-Counterclaim Plaintiff,

      and

UBS AG,

               Third-Party Plaintiff,

      -against-

ROBERT J. REGER, JR. and THELEN, REID, BROWN, RAYSMAN & STEINER, LLP,

               Third-Party Defendants.

## REPLY DECLARATION OF MITCHEL H. OCHS

### ANDERSON & OCHS, LLP
Attorneys for Plaintiff-Counterclaim Defendant
Letizia Martinez de Gonzalez

Office and Post Office Address, Telephone

61 BROADWAY, SUITE 2900
NEW YORK, NEW YORK 10006

(212) 344-3600